# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

Civil Action No.

**CGC HOLDING COMPANY, LLC**, a Colorado limited liability company;
**CRESCENT SOUND YACHT CLUB, LLC**, a Florida limited liability company;
**HARLEM ALGONQUIN LLC**, an Illinois limited liability company; and
**JAMES T. MEDICK**;
on behalf of themselves and all others similarly situated

Plaintiffs,

v.

**SANDY HUTCHENS**, a/k/a Fred Hayes, a/k/a Moishe Alexander, a/k/a Moshe Ben Avraham;
**TANYA HUTCHENS**;
**JENNIFER HUTCHENS**, a/k/a Jennifer Araujo;
**CANADIAN FUNDING CORPORATION**; an Ontario corporation;
**308 ELGIN STREET INC.**, an Ontario corporation;
**FIRST CENTRAL MORTGAGE FUNDING INC.**, an Ontario corporation;
**FIRST CENTRAL HOLDINGS INC.**, an Ontario corporation;
**BARRY J. POULSON**;
**ARSENAU POULSON**, a partnership;
**ALVIN MEISELS**;
**BLANEY McMURTRY LLP**, an Ontario limited liability partnership;
**REZNICK, PARSONS, MEISELS, TABERNER**, a partnership;
**RONALD GACHE**;
**BROAD AND CASSEL**, a partnership
**H. JAN LUISTERMANS**, a/k/a Herman Luisterman;
**REALTY 1 REAL ESTATE SERVICES LTD**, an Ontario corporation; and
**DOE LIMITED 1 – 100**.

Defendants.

---

# COMPLAINT

---

Plaintiffs, by their attorneys, state for themselves and for all others similarly situated, as

follows:

## I.  INTRODUCTION

1.      This is a federal class action on behalf of various natural persons and entities in several States who were victimized by an advance fee loan fraud perpetrated by the Defendants.  The Plaintiffs are among those who were so victimized and they seek to be appointed as Class Representatives on behalf of themselves and all others similarly situated.

2.      The advance fee loan fraud was organized and controlled by Sandy Hutchens. Through the use of aliases and shell entities, he created the illusion that he was operating a bona fide real estate lending enterprise.  And, through the conspiracy, assistance and concerted action by family members, lawyers and one real estate agent, Sandy Hutchens has deprived Plaintiffs and members of the Class of monies in excess of $8.4 million.

## II.  THE PARTIES

3.      The named Plaintiffs are identified as follows:

(a)      CGC Holding Company, LLC ("CGC Holding") is a Colorado limited liability company with its principal place of business at 7803 East Stroh Road, Parker, Colorado.

(b)      Crescent Sound Yacht Club, LLC ("Crescent Sound") is a Florida limited liability company with its principal place of business at 106 N. Sewalls Point Road, Sewalls Point, Florida.

(c)      Harlem Algonquin LLC ("Harlem Algonquin") is an Illinois limited liability company with its principal place of business at One Riverside Lane, Lincolnshire, Illinois.

(d)     James T. Medick ("Medick") is an individual who resides at 2014 Country Cove Court, Las Vegas, Nevada.

4.     Defendant Sandy Hutchens is a Canadian citizen who has used a number of aliases, including Fred Hayes, Moishe Alexander, Moishe Ben Avraham and Moshe Ben Avraham.  Using these pretensions, Sandy Hutchens represented himself to be the chief executive officer of First Central Mortgage Funding Inc., Canadian Funding Corporation, 308 Elgin Street Inc., and First Central Holdings Inc.

5.     Defendant Tanya Hutchens is the wife of Sandy Hutchens.  As a Canadian citizen, she prepared all or virtually all of the loan commitment letters.  In addition, she owns the Doe Limited 1 – 100 entities.  The net proceeds of the advance fees paid by Plaintiffs and members of the Class were transferred to her, accounts controlled by her or to Doe Limited 1 – 100.

6.     Defendant Jennifer Hutchens is the daughter of Sandy Hutchens.  As a Canadian citizen and under the alias of Jennifer Araujo, she represented herself to be the "Manager of Underwriting" for First Central Mortgage Funding Inc., Canadian Funding Corporation and 308 Elgin Street Inc.

7.     Defendant Canadian Funding Corporation ("CFC") is an Ontario corporation, which was incorporated by Sandy Hutchens on January 28, 2004, with its principal place of business represented to be at Suite 152, 1054 Centre Street, Thornhill, Ontario, Canada.

8.     Defendant 308 Elgin Street Inc. ("308 Elgin") is an Ontario corporation with its principal place of business represented to be at Suite 152, 1054 Centre Street, Thornhill, Ontario, Canada.

9.      Defendant First Central Mortgage Funding Inc. ("FCMF") is an Ontario corporation with its principal place of business represented to be at Suite 409, 6021 Yonge Street, Toronto, Ontario, Canada M2M 3W2.

10.     Defendant First Central Holdings Inc. ("FCH") is an Ontario corporation with its principal place of business represented to be at Suite 409, 6021 Yonge Street, Thornhill, Ontario, Canada.

11.     Defendant Barry J. Poulson is a partner with the Canadian law firm of Arseneau Poulson.

12.     Defendant Arseneau Poulson is a Canadian law firm with offices at 1254 Durham Street, Sudbury, Ontario, Canada.

13.     Defendant Alvin Meisels is a partner with the Canadian law firm of Blaney McMurtry LLP.

14.     Defendant Blaney McMurtry LLP is a Canadian law firm with offices at 2 Queen Street East, Suite 1500, Toronto, Ontario.

15.     Defendant Ronald Gache is a partner with the Florida law firm of Broad and Cassel.

16.     Defendant Broad and Cassel is a Florida law firm with offices at One North Clematis Street, West Palm Beach, Florida.

17.     H. Jan Luistermans, a/k/a Herman Luisterman ("Luistermans"), is a Canadian real estate agent employed by Defendant Realty 1 Real Estate Services Ltd.

18.     Defendant Realty 1 Real Estate Services Ltd ("Realty 1") is an Ontario corporation located at 17 McTaggart Crescent, London, Ontario, Canada.

19.     Defendant Doe Limited Doe Limited 1 – 100 are various persons, accounts, corporations and limited liability companies to which were transferred the monies generated by the pattern of racketeering activity as alleged herein below.  Such persons, accounts, corporations and limited liability companies were in conspiracy with, or were owned or controlled by, Tanya Hutchens These persons, accounts, corporations and limited liability companies may include, but are not limited to, the following:

| | |
|---|---|
| CFL | 331 Regent |
| CPC | 364 Morris |
| Estate of Judith Hutchens | 625 Ash Street |
| First Central USD | 720 Cambrian |
| JBD Hutchens Family Holdings Inc. | 789 Lawson |
| JBD Holdings | 15-16 Keziah |
| 17 Serpentine | 2800 Flagler Drive Units 106 - 107, LLC |
| 29 Laren | 3415 Errington |
| 101 Services Rd Inc. | 3419 Errington |
| 103 Mountain | 110-114 Pine |
| 146 Whitaker Street Inc. | 367-369 Howey |
| 193 Mountain | 1123896 Ontario Inc. |
| 308 Elgin St (US) | 1473142 Ontario Inc. |
| 308 Elgin St (CDN) | 1473368 Ontario Inc. |
| | 1697030 Ontario Inc. |

### III.  JURISDICTION AND VENUE

20.     This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1332.  This court has supplementary jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367(a).

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (d).  This District is where some acts giving rise to the violations complained of occurred.  All of the individual Defendants are residents of Ontario, Canada.  FCMF, CFC, 308 Elgin, FCH, Doe Limited Doe Limited 1 – 100, Arsenau Poulson, and Blaney McMurtry are various entities domiciled in Ontario, Canada.

### IV.  GENERAL ALLEGATIONS

**A.     CFC, FCMF and 308 Elgin Issued Fraudulent Loan Commitments to Plaintiffs and members of the Class**

22.     The named Plaintiffs are natural persons or entities who reside or conduct business within the United States and who required financing for real estate.  The relevant facts pertaining to each are set forth in Exhibits A through D attached to the Motion to Freeze Assets filed contemporaneously herewith.  Under the impression that they were dealing with persons variously identified as Fred Hayes, Moshe Ben Avraham and/or Moishe Alexander, the named Plaintiffs were actually dealing with Sandy Hutchens.  Further, under the impression that they were dealing with a person identified as Jennifer Araujo, the named Plaintiffs were actually dealing with Jennifer Hutchens.  It was only after the loan commitments were not honored that the named Plaintiffs learn

that they had been dealing with Sandy Hutchens and his daughter, Jennifer Hutchens.  The named Plaintiffs dealt with Sandy Hutchens and Jennifer Hutchens under the following aliases:

      (a)    CGC: Sandy Hutchens as Fred Hayes and Moshe Ben Avraham, and Jennifer Hutchens as Jennifer Araujo

      (b)    Crescent Sound: Sandy Hutchens as Moishe Alexander

      (c)    Harlem Algonquin: Sandy Hutchens as Moishe Alexander

      (d)    Medick: Sandy Hutchens as Moshe Ben Avraham

23.    Plaintiffs and members of the Class were in the market seeking loans to be collateralized by real estate and, in that regard, engaged the services of various mortgage brokers across the United States.  The mortgage brokers, in the ordinary course of the mortgage brokerage business, obtained loan applications and related materials from the Plaintiffs and members of the Class, which were sent to CFC, FCMF or 308 Elgin, as the case may be.

24.    Sandy Hutchens has a criminal record which spans more than twenty years.  His most recent conviction was in April 2005 for three counts of fraud.  To disguise the fact that he is a career criminal, which could readily be found through an internet search, Sandy Hutchens used several aliases which include Fred Hayes, Moishe Alexander and Moshe Ben Avraham.  He never used his true name in any of the dealings with Plaintiffs and members of the Class.

25.    While on probation and/or under house arrest for the 2005 conviction, Sandy Hutchens started an advance fee loan fraud under CFC which he incorporated on January 28, 2004.  He later incorporated 308 Elgin on October 27, 2006 and FCMF on December 12, 2006 to engage in the same business.

26.     The essential business of these three companies was the issuance of loan commitments and the collection of substantial advance fees.  None of these three companies had the capacity to fund the loans which had been committed.

27.     Sandy Hutchens incorporated FCH for the purpose of receiving wire transfers from Plaintiffs and members of the Class.

28.     Tanya Hutchens wrote or virtually all of the loan commitment letters issued by CFC, FCMF and 308 Elgin purporting to commit loans to Plaintiffs and members of the Class.  In addition, she owns or controls the Doe Limited 1 – 100 entities.  The net proceeds of the advance fees paid by Plaintiffs and members of the Class were transferred to her, accounts controlled by her or to Doe Limited 1 – 100.

29.     Sandy Hutchens' daughter, Jennifer Hutchens, represented herself to the Plaintiffs and members of the Class as Jennifer Araujo, the "Manager of Underwriting" for FCMF, CFC, and 308 Elgin.  She busied herself with requests for documents and other additional information from the Plaintiffs and members of the Class, thus giving the impression that she was actually engaged in underwriting activities and augmenting the outward impression that FCMF, CFC and 308 Elgin were bona fide lenders.

30.     CFC, FCMF and 308 Elgin, as the case may be, issued commitments to loan money to Plaintiffs and members of the Class.

31.     The loan commitments essentially provided that, as a condition for closing on the respective commitment, substantial fees were required in advance which were characterized as "lenders legal fees," "lenders administrative fee," "inspection fee" and "brokerage fee."

32.     After payment of the "inspection fee," Luistermans, as a Canadian real estate agent employed by Realty 1 Real Estate Services Ltd, performed "inspections" of the prospective collateral and wrote "Inspection Reports" to FCMF, CFC and 308 Elgin for the ostensible purpose of determining whether such properties would serve as acceptable collateral.  He invariably approved the respective properties in the "Inspection Reports" that he wrote.  From time to time, Luistermans represented that one or more of these companies had actually closed loans, a representation that he knew full well was not true.  All acts of Luistermans described herein are imputed to Realty 1.

33.     Upon the issuance of the "Inspection Report" by Luistermans, in each instance, Sandy Hutchens or Jennifer Hutchens gave wiring instructions for the legal and administrative fees to be wired to one of the accounts under the name of FCMF, CFC, 308 Elgin or FCH.

34.     Not including fees and expenses incurred to third parties, the Plaintiffs advanced the amounts as set forth on Exhibits A through D attached to the Motion to Freeze Assets filed contemporaneously herewith which are summarized as follows:

|  | Fees Paid | | |
| --- | --- | --- | --- |
| Named Plaintiff | Inspection | Legal | Administrative |
| CGC Holding Company, LLC | 7,500 | 5,000 | 170,000 |
| Crescent Sound Yacht Club, LLC | 3,500 | 15,000 | 250,000 |
| Harlem Algonquin LLC | 3,500 | 7,500 | 31,688 |
| James T. Medick | 2,500 | 2,500 | 86,500 |

35.     Members of the Class, in similar fashion, advanced monies for fees as required by the loan commitments and as directed by Sandy Hutchens.  From the time of the organization of the

three entities, FCMF, CFC and 308 Elgin, through the end of 2009, the fees were paid by borrower-applicants (including members of the Class) in the aggregate amount of $8,418,696.  Over this same span of time, the number of loans made by these three entities amounted to $478,750 with the largest being $115,000.  Based on the affidavit of Martin Lapedus, who provided accounting services to Sandy Hutchens and the entities under his control between 2005 through 2009, the fees collected and the loans made during that time are summarized as follows

(a)     CFC:

| Year | Fees | Loans Funded | |
|------|------|--------|--------|
| | | **Number** | **Amount** |
| 2005 | 444,671 | 3 | 83,750 |
| 2006 | 538,214 | 0 | 0 |
| 2007 | 358,163 | 0 | 0 |
| 2008 | 38,179 | 0 | 0 |
| 2009 | 137,064 | 0 | 0 |

(b)     308 Elgin:

| Year | Fees | Loans Funded | |
|------|------|--------|--------|
| | | **Number** | **Amount** |
| 2007 | 545,390 | 0 | 0 |
| 2008 | 2,900,317 | | 395,000 |
| 2009 | 1,853,227 | 0 | 0 |

(c)     FCMF:

| Year | Fees | Loans Funded | |
|------|------|--------|--------|
| | | Number | Amount |
| 2009 | 1,603,441 | 0 | 0 |

36.     Deep into the loan application process of each loan, Sandy Hutchens, Tanya Hutchens and Jennifer Hutchens invariably found fault with the loan applications and materials submitted in support thereof, the borrowers, the brokers and the property offered as collateral.  Additional terms and conditions were imposed, including the demand for additional fees.  These Defendants thereupon used trumped up defects which they allegedly found to support their demands for additional fees and, ultimately, as grounds for terminating the loan application process.  Upon the loan application being so terminated, Defendants kept all of the monies which had been advanced, claiming that such had been earned, and refused to give any of it back.

37.     The activities of FCMF, CFC, 308 Elgin, FCH, and Doe Limited Doe Limited 1 – 100 were conducted from the home of Sandy and Tanya Hutchens.  None of these entities had an office out of which lending activities were conducted.  The physical addresses gave the impression that these entities were actual lenders with a place of business from which to conduct a lending operation. Notwithstanding the foregoing, there was nothing more at each of the several addresses than a collection of rental mail boxes.

38.     At no time did FCMF, CFC or 308 Elgin have the capacity, the ability or the intent to fund the loans which had been committed.

**B.      Meisels and Blaney McMurtry, and Poulson and Aresenau Poulson, Were Obligated under the Applicable Rules to Know Their Clients, Sandy Hutchens, CFC, FCMF, 308 Elgin and FCH.**

39.      Meisels, Blaney McMurtry, Poulson and Arsenau Poulson had the affirmative obligation imposed by rules promulgated by The Law Society of Upper Canada to know their clients, Sandy Hutchens, CFC, FCMF and 308 Elgin.  Specifically, Meisels and Poulson, and their respective law firms, were required to know:

     (a)      With respect to Sandy Hutchens:

          i.      His full name

          ii.      His business address and telephone number, if any

          iii.      His home address and home telephone number

          iv.      His occupation or occupations

     (b)      With respect to CFC, FCMF and 308 Elgin:

          i.      The organization's full name

          ii.      The organization's business address and phone number, if any

          iii.      The organization's corporation or business identification number and the place of issue of its corporation or business identification number

          iv.      The general nature of the type of business or businesses or activity or activities engaged in by the organization

          v.      The name, position and contact information of each individual who provides the attorney with instructions with respect to the matter on behalf of the organization

40.     Had the foregoing duties been discharged, Meisels and Poulson would have known that:

(a)     Sandy Hutchens had previously used a variety of aliases, including Fred Hayes, Craig Hutchens, Moishe Abraham, Moishe Hutchens, Craig Alexander, Moishe Alexander, Moshe Alexander, Moishe Ben Avraham, and Moshe Ben Avraham.

(b)     Sandy Hutchens was using one or the other of these aliases in the activities complained of herein and that the use of an alias hid from anyone conducting due diligence the fact that Sandy Hutchens had a criminal history as well as a history of collecting advance fees on loan commitments issued by a purported lender;

(c)     Tanya Hutchens was drafting all or virtually all of the loan commitment letters issued by CFC, FCMF and 308 Elgin which purportedly committed loans to Plaintiffs and members of the Class, and that she owned the Doe Limited 1 – 100 entities to which the net proceeds of the advance fees paid by Plaintiffs and members of the Class were transferred to the extent such monies were not transferred to her;

(d)     Jennifer Hutchens was using an alias of Jennifer Araujo in her activities which are complained of herein, which obscured her relationship with Sandy Hutchens;

(e)     The respective business addresses of CFC, FCMF or 308 Elgin were not as represented and that the use of street addresses gave the impression that CFC, FCMF or 308 Elgin had an actual business address in a commercial location when in fact it was nothing more than a collection of post office boxes;

(f)     The business of Sandy Hutchens, under the ruse that CFC, FCMF and 308 Elgin were bona fide lenders, was that of charging and collecting advance fees from potential borrowers but without the capacity of funding any loans which had been committed; and

(g)     CFC, FCMF and 308 Elgin had not closed any of the loans committed to Plaintiffs and members of the Class.

41.     At the time of the events complained of herein, Meisels and Poulson each had actual knowledge of the prior criminal history of Sandy Hutchens.  They each also had knowledge that CFC, FCMF and 308 Elgin had collected substantial advance fees on loan commitments but without the ability of any of them, or all three in combination, to fund such loans.

**C.     Meisels, Poulson and Gache Vouched for Sandy Hutchens, Jennifer Hutchens, CFC, FCMF and 308 Elgin with Knowledge of the Prior Criminal History and Fraudulent Acts of Sandy Hutchens or with Reckless Disregard for the Truth of the Representations Made Regarding the Bona Fides of CFC, FCMF and 308 Elgin**

42.     Without regard for the actual knowledge that Meisels, Poulson and Gache each had regarding Sandy Hutchens and his activities, and without regard for the affirmative duties placed upon at least Meisels and Poulson to know their client, Meisels, Poulson and Gache made numerous false and misleading representations regarding the bona fides of Sandy Hutchens and the entities which he controlled.

43.     In each of these communications, Meisels, Poulson and Gache, as the case may be, knew that Plaintiffs and members of the Class did not know of Sandy Hutchens' background.  They also knew that both Sandy Hutchens and Jennifer Hutchens were not using their true names and that the use of various aliases would hinder the ability of the Plaintiffs and members of the Class in

conducting due diligence on either Sandy Hutchens or Jennifer Hutchens.  They also knew or were willfully ignorant of the fact that neither CFC, nor FCMF, nor 308 Elgin had the capacity to make the loans which had been committed.  And they also knew, or were recklessly indifferent to the truth, that neither CFC, nor FCMF, nor 308 Elgin or, even a combination of the three entities, had closed "hundreds of loans" as had been represented.  In each of these communications, Meisels, Poulson and Gache had ample opportunity to make the Plaintiffs and members of the Class aware of the foregoing facts.  Rather than doing so, Meisels, Poulson and Gache continued the ruse that CFC, FCMF and 308 Elgin were bona fide lenders with the capacity to make the loans which had been committed.

44.     Specifically, Poulson, a partner in Arsenau Poulson, provided substantial assistance to Sandy Hutchens by writing the following letter dated March 24, 2008:

(a)     "TO WHOM IT MAY CONCERN," Poulson wrote with regard to "308 Elgin Street Inc., Canadian Funding Corporation, Associated Corporations, JBD Family Holdings Inc. and Estates" :

> [W]e have acted for the above corporations and estates and related joint venture syndicated partners for the last three years.  I can advise that over the course of the last 3 years we have completed numerous mortgage transactions and substantial asset purchases totalling [sic] in excess of 80 transactions all funded by the above noted clients.
>
> I am confident in writing that these clients have the ability to fund large mortgage transactions provided that the terms and conditions of the commitment are met in a timely fashion.

(b)     None of the foregoing was true at the time the letter was written.

(c)     The aforesaid March 2008 letter was written in support of loan commitments made by 308 Elgin in Florida to Crescent Sound and other members of the Class.

(d)     Since such vouching was in some instances to other attorneys and loan brokers, the representations by Poulson were multiplied by the loan brokers relaying such representations to their clients, which clients are Plaintiffs and members of the Class.

45.     In various emails, letters and telephone calls, Meisels vouched for the bona fides of Sandy Hutchens, Jennifer Hutchens and the entities under which Sandy Hutchens conducted an advance fee loan fraud: CFC, FCMF and 308 Elgin, including claims that "hundreds of loans" had been closed.  Since such vouching was in some instances to loan brokers, the representations by Meisels were multiplied by the loan brokers relaying such representations to their clients, which clients are Plaintiffs and members of the Class.

46.     In one such representation, Meisels sent an email on September 22, 2009 to Leon Franklin, a loan broker involved with two of the Plaintiffs and some members of the Class, in which he stated:

(a)     "As you have been informed by Jennifer Araujo, I act for Canadian Funding Corporation ('CFC'),  First Central Mortgage Funding Inc. ('First Central'), several related companies and their respective directors."

(b)     "I have acted for CFC, First Central and their principals for over four years. They operate legally and have funded hundreds of mortgage loans.  The directors of these companies guard their privacy very strictly and neither I nor their other lawyers will disclose their identities or confidential financial information."

- 16 -

(c)     "In the meantime, my clients' policies and practices in respect of mortgage applications are patently fair and reasonable. Inspection and related travel costs are charged up front to the applicants. Upon receiving the inspector's approval, the lender charges the borrower a non-refundable administration fee of 0.5%, which compensates for time-consuming underwriting and compliance management. The balance of the lender's fee is escrowed until closing."

(d)     "Be advised that any legal action or complaints to regulatory authorities which may be initiated by applicants who have forfeited fees due to non-compliance or inaccurate and/or misleading disclosure will be vigorously defended and may, where appropriate, result in legal proceedings by my clients against your firm and you personally.   Please govern yourselves accordingly."

47.     Even though Meisels had actual knowledge of the use of various aliases by Sandy Hutchens, he represented that Moshe Ben Avraham was a legitimate person involved with a legitimate lender and that numerous loans had been closed by CFC, FCMF and 308 Elgin.  By so vouching and confirming that he had a long-standing knowledge of Sandy Hutchens, Jennifer Hutchens, CFC, FCMF and 308 Elgin, representing that he had personal knowledge of their track record of successfully closing numerous mortgage loans, Meisels resolved all doubt.

48.     In addition, Gache, a partner in Broad and Cassel, directly or indirectly through other lawyers at Broad and Cassel, provided substantial assistance to Sandy Hutchens in collecting fees on a number of loans which had been, or were to be, committed by 308 Elgin by the following:

(a)      In explaining the lack of information regarding Moishe Alexander, Gache represented that "Mr. Alexander is a very private person and does his business by word of mouth" and that he "was just now reaching out into the United States."  In connection with this representation, Gache did not disclose that Moishe Alexander's real name was Sandy Hutchens.

(b)      Other lawyers at Broad and Cassel, based upon the vouching by Gache, represented that:

    i.      Moishe Alexander was a reputable businessman and a viable source of substantial lending capital at lower than market rates;

    ii.      Moishe Alexander had the financial capability and wherewithal to fund large-scale transactions like those which 308 Elgin had committed;

    iii.      Moishe Alexander had an ongoing joint venture with TD Canada Bank, which was a major source of his funding; and

    iv.      Broad and Cassel was then involved in other similar financings with Moishe Alexander.

(c)      At the time of the aforesaid representations, Gache, directly or indirectly through other lawyers at Broad and Cassel, failed to disclose that Moishe Alexander was a career criminal whose true identity was Sandy Hutchens.

49.      The acts and failures to act by Meisels were within the scope of his agency and employment by Blaney McMurtry and, consequently, all such acts and failures to act are imputed thereto.

50.     The acts and failures to act by Poulson were within the scope of his agency and employment by Arsenau Poulson and, consequently, all such acts and failures to act are imputed thereto.

51.     The acts and failures to act by Gache were within the scope of his agency and employment by Broad and Cassel, and consequently, all such acts and failures to act are imputed thereto.

**D.      Conspiracy, Aiding and Abetting, and Concerted Action by Defendants**

52.     Defendants each agreed by words or conduct to accomplish an unlawful goal, and one or more acts were performed to accomplish an unlawful goal, namely, to promote the issuance of loan commitments by CFC, FCMF or 308 Elgin, as the case may be, to collect fees in advance, to have such advances wired to various accounts of the Defendants, to transfer the monies paid by Plaintiffs and members of the Class from one Defendant to another, and to do all of the foregoing with the knowledge that neither CFC, nor FCMF, nor 308 Elgin had the ability to fund any of the commitments.  As a consequence of the civil conspiracy of these Defendants, the acts of each Defendant became the acts of the other Defendants, for which each of the Defendants are jointly and severally responsible.

53.     Each of the Defendants knowingly gave substantial assistance to the other Defendants in accomplishing the aforesaid goals.  As a consequence thereof, the acts of each Defendant became the acts of all the other Defendants, for which the Defendants are jointly and severally responsible.

54.     Through concerted action, Defendants provided substantial assistance to each other, knowing that their acts would converge or combine to cause Plaintiffs and members of the Class to

suffer losses from the bogus loan commitments described above.  As a consequence of the concerted action by the Defendants, the acts of each Defendant become the acts of all the other Defendants, for which the Defendants are jointly and severally responsible.

55.     By virtue of the foregoing, Plaintiffs and members of the Class suffered losses which were caused by the acts of the Defendants in the pursuit of an unlawful goal.

56.     But for the acts of each Defendant, the other Defendants never would have been able to accomplish the wrongdoing which is set forth herein.  Each of the acts of these Defendants was with the full knowledge of the improper and illegal scheme described above.

57.     At no time has any Defendant given notice of their withdrawal from the conspiracy.

**F.     CFC, FCMF, FCH, 308 Elgin and Doe Limited 1 – 100 Are the Alter Egos of Sandy Hutchens.**

58.     Sandy Hutchens controls CFC, FCMF, FCH, 308 Elgin and Doe Limited 1 – 100 .

59.     Sandy Hutchens has used his control of CFC, FCMF, FCH, 308 Elgin and Doe Limited 1 – 100 to perpetrate the violation of a positive legal duty in contravention of the rights of Plaintiffs and members of the Class.

60.     The aforesaid control and breach of duty has proximately caused damages suffered by Plaintiffs and members of the Class.

61.     As a consequence of the foregoing, the corporate form of CFC, FCMF, FCH, 308 Elgin and Doe Limited 1 – 100 should be disregarded and Sandy Hutchens should be held personally liable on the claims of Plaintiffs and members of the Class as set forth herein.

62.     The aforesaid acts by Sandy Hutchens are imputed to CFC, FCMF, FCH, 308 Elgin and Doe Limited 1 – 100.

63.     Plaintiffs and members of the Class have suffered damages as a proximate consequence of the foregoing.

64.     Plaintiffs and members of the Class are entitled to judgment in their favor and against these Defendants, jointly and severally, for damages in an amount to be determined at trial and such further relief as the Court deems appropriate.

### G.     Plaintiff's Class Action Allegations

65.     Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. Pro. 23(a) and (b)(3) on behalf of a Class consisting of all US residents or domiciled entities to whom were issued loan commitments by CFC, FCMF and 308 Elgin, and who advanced money to one or more of the Defendants or to an account at the direction of any one of the Defendants.  Excluded from the Class are Defendants, their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest.  Also excluded are all persons, who would otherwise be within the Class as defined, who have released the Defendants.

66.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are at least 100 members in the proposed Class.  Members of the Class may be identified from records maintained by Defendants and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in class actions of this nature.

67.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct that is complained of herein.

68.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class actions.

69.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     Whether Sandy Hutchens caused CFC, FCMF or 308 Elgin, as the case may be, to issue loan commitments to Plaintiffs and members of the Class.

(b)     Whether CFC, FCMF, 308 Elgin and FCH are alter egos of Sandy Hutchens.

(c)     Whether Tanya Hutchens wrote all or virtually all of the loan commitment letters.

(d)     Whether Tanya Hutchins owns the Doe Limited 1 – 100 entities.

(e)     Whether the net proceeds of the advance fees paid by Plaintiffs and members of the Class were transferred to Tanya Hutchens, accounts controlled by her or to Doe Limited 1 – 100.

(f)     Whether Plaintiffs and members of the Class advanced monies to Defendants or for the benefit of Defendants.

(g)     Whether a conspiracy existed between the Defendants to further the efforts of Sandy Hutchens to issue fraudulent loan commitments and collect advance fees from Plaintiffs and members of the Class.

(h)     Whether Sandy Hutchens was aided and abetted by the other Defendants in the issuance of fraudulent loan commitments and collect advance fees from Plaintiffs and members of the Class.

(i)     Whether through concerted action by all of the Defendants, Sandy Hutchens was enabled to issue fraudulent loan commitments and collect advance fees from Plaintiffs and members of the Class.

(j)     Whether either CFC, FCMF or 308 Elgin, either directly or through any other lender, had the capacity to fund the loan commitments as and when made.

(k)     Whether statements made by Defendants to the Plaintiffs and members of the Class failed to disclose material facts about the business, operations and management of CFC, FCMF and 308 Elgin.

(l)     Whether Defendants, directly, indirectly and by means of a conspiracy, in an enterprise composed of an association in fact, knowingly participated in a pattern of racketeering activity that affected interstate or foreign commerce in violation of 18 U.S.C. §1962(c).

(m)     Whether Sandy Hutchens, in concert with the other Defendants, found, in every instance, an excuse as to why the loan commitment could not be funded and kept the monies advanced.

(n)     To what extent the Plaintiffs and members of the Class have sustained damages and the proper measure of damages.

(o)     Whether the net proceeds of the advance fees paid by Plaintiffs and members of the Class have been transferred away from FCH, CFC, FCMF and 308 Elgin to Tanya Hutchens and Doe Limited 1 – 100 and so commingled so as to give Plaintiffs and members of the Class pro rata claims to all of such funds and the properties purchased therewith.

70.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small in relation to the aggregate losses suffered by the entire Class and that the members of the Class are scattered throughout the United States, the expense and burden of separate lawsuits make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this case as a class action.

**H.     Damages Suffered by Plaintiffs and Members of the Class**

71.     Plaintiffs and Members of the Class have suffered the following damages:

(a)     Monies wired to various accounts for:

i.     Inspection fees and travel expenses for the purpose of compensating Luistermans for the inspections which he did;

ii.     Legal fees wired for the purpose of compensating Arsenau Poulson, Blaney McMurtry, or Broad and Cassel, as the case may be;

iii.     Administrative fees for the purpose of compensating FCMF, CFC or 308 Elgin, as the case may be; and

(b)     Expenses incurred by the Plaintiffs and Members of the Class for lawyers, appraisers, accountants and other third parties in meeting the demands imposed by Sandy Hutchens.

**FIRST CLAIM FOR RELIEF**
**(**Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*.)

72.     The factual allegations set forth hereinabove are incorporated by this reference.

73.     Defendants, directly, indirectly and by means of a conspiracy, in an enterprise composed of an association in fact, knowingly participated in a pattern of racketeering activity that affected interstate or foreign commerce in violation of 18 U.S.C. §1962(c).

74.     CFC, FCMF, FCH, 308 Elgin and Doe Limited 1 – 100 were associated in fact as an enterprise within the meaning of 18 U.S.C. § 1961(4).

75.     The enterprise was managed by Sandy Hutchens, Tanya Hutchens and Jennifer Hutchens.

76.     Defendants conspired with each other and endeavored to perpetuate the enterprise and engage in a pattern of racketeering activity, that affected interstate or foreign commerce in violation of 18 U.S.C. §1962(d).

77.     The role of each member of the enterprise was as follows:

(a)     CFC, FCMF and 308 Elgin each issued commitments for loans which required fees in advance without the present or foreseeable ability to fund such loans.

- 25 -

(b)     FCH, CFC, FCMF and 308 Elgin received, by wire transfer, advance fees Plaintiffs and members of the Class as required by the loan commitments which had been made.

(c)     The net proceeds of the advance fee scheme were transferred to Doe Limited 1 – 100.

78.     Defendants engaged in unlawful ongoing activity of predicate acts in their effort to issue loan commitments in order to fraudulently acquire funds from persons desiring to obtain financing for real estate.

79.     The racketeering activity, as that term is defined by 18 U.S.C. § 1961(1) (B), was wire fraud prohibited by 18 U.S.C. §1343.  Defendants committed, and conspired to commit, a violation of 18 U.S.C. § 1343 when the Defendants, for the purpose of executing their scheme and artifice to defraud and for obtaining money by false and fraudulent pretenses, through false representations and false promises, and attempting to do so, did knowingly cause, and aid and abet others to cause, to be transmitted in interstate or foreign commerce, from and to Colorado and other States, and from and to their locations in Canada, by means of wire communications, certain signals and sounds, in connection with, and in furtherance of, the enterprise, all as set forth in Exhibits A through D attached to the Motion to Freeze Assets filed contemporaneously herewith.

80.     The pattern of racketeering activity, as that term is defined by 18 U.S.C. § 1961(5), was by means of telephone, fax and email between the Defendants from offices in Toronto, Ontario, on the one hand, and loan brokers and potential borrowers throughout the United States, on the other,

plus wire transfers of money from Plaintiffs and Members of the Class to Defendants or accounts controlled by the Defendants, to wit:

(a)     Sandy Hutchens, using various alias names but never his own, represented himself to be the chief executive officer of, and employed by CFC, FCMF, 308 Eglin and FCH.

(b)     Tanya Hutchens wrote all or virtually all of the loan commitment letters.

(c)     Jennifer Hutchens, using the alias name of Jennifer Araujo, represented herself to be the "Manager of Underwriting" for CFC, FCMF and 308 Eglin.

(d)     Sandy Hutchens caused loan commitments to be issued to Plaintiffs and members of the Class.

(e)     By means of the telephone, fax, and email from an office in Toronto, Ontario, to loan brokers and to potential borrowers, Sandy Hutchens represented that CFC, FCMF and 308 Eglin, as the case may be, were lenders with the ability to fund loans which had been committed.

(f)     Tanya Hutchens owns the Doe Limited 1 – 100 entities to which were transferred the net proceeds of the advance fees paid by Plaintiffs and members of the Class.

(g)     When called upon to do so, Meisels, Poulson and Gache, as partners of their respective law firms, made numerous false and misleading representations:

i.      That Sandy Hutchens, using the alias du jour, was a reputable businessman;

ii.     That CFC, FCMF and 308 Eglin were bona fide lenders;

- 27 -

iii.      That CFC, FCMF and 308 Eglin had closed numerous loans;

iv.      That CFC, FCMF and 308 Eglin had the capacity to close the loan commitment which had been made to the respective inquirer.

(h)      When given the opportunity to do so, Meisels, Poulson and Gache, as partners of their respective law firms and failed to disclose that:

i.      Sandy Hutchens was a career criminal and that the name he was using with the prospective borrower was an alias;

ii.      Neither CFC, nor FCMF, nor 308 Eglin were bona fide lenders;

iii.      Neither CFC, nor FCMF, nor 308 Eglin had closed any loans or any loans of any significance;

iv.      Neither CFC, nor FCMF, nor 308 Eglin had the capacity to close the loan commitment which had been made to the respective inquirer.

81.      Defendants knowingly received the proceeds from a pattern of racketeering in the operation of the enterprise by the payment of fees to each of them plus the transfer of the net proceeds of the fraud to Doe Limited Doe Limited 1 – 100 for the use and benefit of Sandy Hutchens.

82.      Defendants knowingly acquired or maintained an interest in or control of an enterprise through a pattern of racketeering affect interstate and foreign commerce.  The proceeds derived from the pattern of racketeering were used to acquire or maintain an interest in the enterprise, and the property was acquired for and on behalf of the enterprise.

83.     During the ten calendar years preceding the date hereof, all Defendants did cooperate jointly and severally in the commission of two or more of the predicate acts that are set forth in 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of 18 U.S.C. 1962(c).  Further, such predicate acts were intentional with a threat that their respective racketeering activities would continue in violation of 18 U.S.C. § 1962(c).

84.     Defendants caused injury through their pattern of racketeering activity, because the victims of the Defendants schemes, plans and devices, where seriously injured by the operation of the Defendants' enterprise.

85.     Plaintiffs and members of the Class have been damaged as a direct and proximate result of the pattern of racketeering described above.

86.     Plaintiffs and members of the Class are entitled to relief pursuant to 18 U.S.C. § 1964 in order to make them whole.

87.     Plaintiffs and members of the Class are entitled to a judgment against Defendants, jointly and severally, in the respective amount of the damages suffered, trebled pursuant to 18 U.S.C. § 1964(c), together with attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
(Conversion)

88.     The factual allegations set forth hereinabove are incorporated by this reference.

89.     Sandy Hutchens, directly or through his control of CFC, FCMF, FCH, 308 Elgin and Doe Limited 1 – 100, converted to his own use monies paid by Plaintiffs and members of the Class as required by loan commitments issued by entities under his control.

90.     Sandy Hutchens has failed and refused to return the monies advanced by the Plaintiffs and members of the Class despite their demand.

91.     Sandy Hutchens intended to misappropriate the property as described above.

92.     The misappropriated property constitutes a conversion for which Sandy Hutchens is liable.

93.     As a direct and proximate consequence of the said conversion, the Plaintiffs and members of the Class have been damaged to the extent of the misappropriated monies and property plus interest.

94.     The damages suffered by the Plaintiffs and members of the Class were attended by circumstances of fraud, malice, or willful and wanton conduct warranting the imposition of punitive damages.

95.     Plaintiffs and members of the Class are entitled to a judgment against Defendants, jointly and severally, in the respective amount of the damages suffered, plus pre-judgment interest, punitive damages and costs.

### THIRD CLAIM FOR RELIEF
(Negligent Misrepresentation)

96.     The factual allegations set forth hereinabove are incorporated by this reference.

97.     Meisels, Poulson, Gache and Luistermans gave false information to, or withheld adverse information from, Plaintiffs and members of the Class in the course of a business transaction in which these Defendants had a financial interest.

98.    Meisels, Poulson, Gache and Luistermans were negligent in obtaining or communicating the information or withholding the adverse information.

99.    Meisels, Poulson, Gache and Luistermans gave or concealed such information with the intent or knowing that Plaintiffs and members of the Class would act in reliance on the information given or the absence of adverse information.

100.    Plaintiffs and members of the Class relied on information suppled by Meisels, Poulson, Gache and Luistermans.

101.    This reliance on the information supplied by Poulson, Gache and Luistermans was the direct and proximate caused damage to Plaintiffs and members of the Class.

102.    The aforesaid representations and failures to disclose by Meisels, Poulson, Gache and Luistermans are imputed to their respective employers.

103.    Plaintiffs and members of the Class are entitled to judgment against Meisels, Blaney McMurtry, Poulson, Arsenau Poulson , Gache, Broad and Cassel, Luistermans and Realty 1 in such amount as is proven at trial, statutory interest, and such other relief as the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF
### (Constructive Trust)

104.    The factual allegations set forth hereinabove are incorporated by this reference.

105.    Sandy Hutchens, directly and, by virtue of his control, CFC, FCMF, FCH, 308 Elgin and Doe Limited 1 – 100, is an involuntary trustee to the extent any misappropriated property remains in his hands and holds same in constructive trust for the benefit of Plaintiffs and members of the Class.

106.    Equity requires all monies wrongfully obtained by Sandy Hutchens, CFC, FCMF, FCH, 308 Elgin and Doe Limited 1 – 100, be held in trust for the benefit of Plaintiffs and members of the Class.

107.    Plaintiffs and members of the Class are entitled to the imposition of a constructive trust of all monies received by Defendants and properties purchased with such monies.

108.    Given the aforesaid and that monies have been transferred away from CFC, FCMF, FCH, 308 Elgin to Tanya Hutchens and/or Doe Limited 1 – 100, Plaintiffs and members of the Class are entitled to a mandatory injunction requiring Defendants to turnover such assets to them in partial satisfaction of their claims.

## FIFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

109.    The factual allegations set forth hereinabove are incorporated by this reference.

110.    Plaintiffs and members of the Class conferred upon Defendants a benefit, namely money advanced against bogus loan commitments.

111.    Defendants wrongfully obtained from Plaintiffs and members of the Class monies under circumstances that would make it unjust for them to retain the benefits conferred.

112.    By virtue of the civil conspiracy, aiding and abetting, and concerted action, Defendants are jointly and severally liable.

113.    The monies advanced by Plaintiffs and members of the Class belong, in equity and good conscience, to them and not to Defendants.

114.    Plaintiffs and members of the Class are entitled to judgment in their favor and against

Defendants in the amount of the monies advanced plus interest, costs and such other relief the Court

deems appropriate.

WHEREFORE, Plaintiffs and members of the Class demand the following relief:

1.    Judgment in their favor and against the Defendants, jointly and severally, for three

times such sums as may be determined at trial, punitive damages, attorneys' fees, costs, pre – and

post–judgment interest;

2.    A mandatory injunction imposing a constructive trust on the assets of Defendants

Sandy Hutchens, Tanya Hutchens, Jennifer Hutchens, Canadian Funding Corporation, 308 Elgin

Street Inc., First Central Mortgage Funding Inc., First Central Holdings Inc., and Doe Limited 1 –

100, ordering said Defendants to turnover such assets to Plaintiffs and members of the Class; and

3.    For all such other and further relief as to this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs and members of the Class demand a trial by jury pursuant to Fed. R. Civ. Pro. 38(b).

Dated this __/__ day of April, 2011.

HEAD & ASSOCIATES, P.C.

By: _____

John F. Head, No. 3077
1860 Blake Street, Suite 300
Denver, Colorado 80202
Telephone: 303-623-6000
Telecopier: 303-623-4211

Address of Plaintiffs:

CGC Holding Company, LLC
7803 East Stroh Road
Parker, CO 80134

Crescent Sound Yacht Club, LLC
106 N. Sewalls Point Road
Sewalls Point, FL 34996

Harlem Algonquin LLC
One Riverside Lane
Lincolnshire, IL 60069

James T. Medick
2014 Country Cove Court
Las Vegas, NV 89135