## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 11-CV-001012

**CGC HOLDING COMPANY, LLC**, a Colorado limited liability company;
**CRESCENT SOUND YACHT CLUB, LLC**, a Florida limited liability company;
**HARLEM ALGONQUIN LLC**, an Illinois limited liability company; and
**JAMES T. MEDICK**;
on behalf of themselves and all others similarly situated

Plaintiffs,

v.

**SANDY HUTCHENS**, a/k/a Fred Hayes, a/k/a Moishe Alexander, a/k/a Moshe Ben Avraham;
**TANYA HUTCHENS**;
**JENNIFER HUTCHENS**, a/k/a Jennifer Araujo;
**CANADIAN FUNDING CORPORATION**; an Ontario corporation;
**308 ELGIN STREET INC.**, an Ontario corporation;
**FIRST CENTRAL MORTGAGE FUNDING INC.**, an Ontario corporation;
**FIRST CENTRAL HOLDINGS INC.**, an Ontario corporation;
**BARRY J. POULSON**;
**ARSENAU POULSON**, a partnership;
**ALVIN MEISELS**;
**BLANEY McMURTRY LLP**, an Ontario limited liability partnership;
**REZNICK, PARSONS, MEISELS, TABERNER**, a partnership;
**RONALD GACHE**;
**BROAD AND CASSEL**, a partnership
**H. JAN LUISTERMANS**, a/k/a Herman Luisterman;
**REALTY 1 REAL ESTATE SERVICES LTD**, an Ontario corporation; and
**DOE LIMITED 1 – 100**.

Defendants.

---

## PLAINTIFFS' MOTION TO CERTIFY CLASS AND APPOINT CLASS COUNSEL

---

Plaintiffs, by their attorneys, move this Court, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), to certify a class comprised of all US residents or domiciled entities to whom were issued loan commitments by Canadian Funding Corporation, First Central Mortgage Funding Inc., and 308 Elgin Street Inc., and who advanced money to Defendants Sandy Hutchens, Tanya Hutchens, Jennifer Hutchens, Canadian Funding Corporation, 308 Elgin Street Inc., First Central Mortgage Funding Inc., First Central Holdings Inc., Doe Limited 1 – 100, Barry J. Poulson, Arsenau Poulson, Alvin Meisels, Blaney Mcmurtry LLP, Reznick, Parsons, Meisels, Taberner, Ronald Gache, Broad and Cassel, H. Jan Luistermans, or Realty 1 Real Estate Services Ltd, or to an account at the direction of any one of the Defendants.  Excluded from the Class are Defendants, their legal representatives, heirs, successors or assigns and any entity in which any Defendant has or had a controlling interest.

Plaintiffs also ask the Court to appoint the undersigned as class counsel pursuant to Fed. R. Civ. P. 23(g). For the reasons set forth below and in the attached affidavits, this motion should be granted.

### D.C.Colo.LR 7.1 Conference

Plaintiffs' counsel has not consulted opposing counsel with respect to this motion because no counsel has yet appeared.

### I. INTRODUCTION

1.       This case was filed as a federal class action on behalf of various natural persons and entities in several States who were victimized by an advance fee loan fraud perpetrated by the

Defendants.  The Plaintiffs are among those who were so victimized and they seek to be appointed as Class Representatives on behalf of all others similarly situated.

2.     The advance fee loan fraud was organized and controlled by Sandy Hutchens. Through the use of aliases and shell entities, he created the illusion that the entities which he controlled – Canadian Funding Corporation, First Central Mortgage Funding Inc., and 308 Elgin Street Inc., as the case may be, – were bona fide real estate lenders.  And, through the conspiracy, assistance and concerted action by family members, lawyers and one real estate agent, Sandy Hutchens has deprived Plaintiffs and members of the Class of monies in excess of $8.4 million.

## II. THE PARTIES

3.     The named Plaintiffs are identified as follows:

(a)     CGC Holding Company, LLC ("CGC Holding") is a Colorado limited liability company with its principal place of business at 7803 East Stroh Road, Parker, Colorado.

(b)     Crescent Sound Yacht Club, LLC ("Crescent Sound") is a Florida limited liability company with its principal place of business at 106 N. Sewalls Point Road, Sewalls Point, Florida.

(c)     Harlem Algonquin LLC ("Harlem Algonquin") is an Illinois limited liability company with its principal place of business at One Riverside Lane, Lincolnshire, Illinois.

(d)     James T. Medick ("Medick") is an individual who resides at 2014 Country Cove Court, Las Vegas, Nevada.

4.      Defendant Sandy Hutchens is a Canadian citizen who has used a number of aliases, including Fred Hayes, Moishe Alexander, Moishe Ben Avraham and Moshe Ben Avraham.  Using these pretensions, Sandy Hutchens represented himself to be the chief executive officer of First Central Mortgage Funding Inc., Canadian Funding Corporation, 308 Elgin Street Inc., and First Central Holdings Inc.

5.      Defendant Tanya Hutchens is the wife of Sandy Hutchens.  As a Canadian citizen, she prepared all or virtually all of the loan commitment letters.  In addition, she owns the Doe Limited 1 – 100 entities.  The net proceeds of the advance fees paid by Plaintiffs and members of the Class were transferred to her, accounts controlled by her or to Doe Limited 1 – 100.

6.      Defendant Jennifer Hutchens is the daughter of Sandy Hutchens.  As a Canadian citizen and under the alias of Jennifer Araujo, she represented herself to be the "Manager of Underwriting" for First Central Mortgage Funding Inc., Canadian Funding Corporation and 308 Elgin Street Inc.

7.      Defendant Canadian Funding Corporation ("CFC") is an Ontario corporation, which was incorporated by Sandy Hutchens on January 28, 2004, with its principal place of business represented to be at Suite 152, 1054 Centre Street, Thornhill, Ontario, Canada.

8.      Defendant 308 Elgin Street Inc. ("308 Elgin") is an Ontario corporation with its principal place of business represented to be at Suite 152, 1054 Centre Street, Thornhill, Ontario, Canada.

9.      Defendant First Central Mortgage Funding Inc. ("FCMF") is an Ontario corporation with its principal place of business represented to be at Suite 409, 6021 Yonge Street, Toronto, Ontario, Canada M2M 3W2.

10.     Defendant First Central Holdings Inc. ("FCH") is an Ontario corporation with its principal place of business represented to be at Suite 409, 6021 Yonge Street, Thornhill, Ontario, Canada.

11.     Defendant Barry J. Poulson is a partner with the Canadian law firm of Arseneau Poulson.

12.     Defendant Arseneau Poulson is a Canadian law firm with offices at 1254 Durham Street, Sudbury, Ontario, Canada.

13.     Defendant Alvin Meisels is a partner with the Canadian law firm of Blaney McMurtry LLP.

14.     Defendant Blaney McMurtry LLP is a Canadian law firm with offices at 2 Queen Street East, Suite 1500, Toronto, Ontario.

15.     Defendant Ron Gache is a partner with the Florida law firm of Broad and Cassel.

16.     Defendant Broad and Cassel is a Florida law firm with offices at One North Clematis Street, West Palm Beach, Florida.

17.     H. Jan Luistermans, a/k/a Herman Luisterman ("Luistermans"), is a Canadian real estate agent employed by Defendant Realty 1 Real Estate Services Ltd.

18.     Defendant Realty 1 Real Estate Services Ltd ("Realty 1") is an Ontario corporation located at 17 McTaggart Crescent, London, Ontario, Canada.

19.    Defendant Doe Limited Doe Limited 1 – 100 are various persons, accounts, corporations and limited liability companies to which were transferred the monies generated by the pattern of racketeering activity as alleged herein below.  Such persons, accounts, corporations and limited liability companies were in conspiracy with, or were owned or controlled by, Tanya Hutchens These persons, accounts, corporations and limited liability companies may include, but are not limited to, the following:

| | |
|---|---|
| CFL | 331 Regent |
| CPC | 364 Morris |
| Estate of Judith Hutchens | 625 Ash Street |
| First Central USD | 720 Cambrian |
| JBD Hutchens Family Holdings Inc. | 789 Lawson |
| JBD Holdings | 15-16 Keziah |
| 17 Serpentine | 2800 Flagler Drive Units 106 - 107, LLC |
| 29 Laren | 3415 Errington |
| 101 Services Rd Inc. | 3419 Errington |
| 103 Mountain | 110-114 Pine |
| 146 Whitaker Street Inc. | 367-369 Howey |
| 193 Mountain | 1123896 Ontario Inc. |
| 308 Elgin St (US) | 1473142 Ontario Inc. |
| 308 Elgin St (CDN) | 1473368 Ontario Inc. |
| | 1697030 Ontario Inc. |

### III.  ARGUMENT

**1.      Principles Applicable to Class Certification.**

In ruling on a motion for class certification, "the district court must determine whether the four threshold requirements of Rule 23(a) are met. If the court determines that they are, it must then examine whether the action falls within one of three categories of suits set forth in Rule 23(b)."[1]

Class certification is solely a procedural issue, and the court's inquiry is limited to determining whether the proposed class satisfies the requirements of Rule 23.[2]   In ruling on the motion for class certification, the court must take the substantive allegations of the complaint as true.[3]   If the court has some doubt, it should err in favor of certification, since the decision is subject to later modification.[4]

**2.      The Requirements of Rule 23(a) Are Satisfied.**

In order for a class to be certified, the following requirements must be satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[1]*Adamson v. Bowen*, 855 F.2d 668, 675 (10th Cir. 1988) (footnote omitted).

[2]*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).

[3]*J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999).

[4]*Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968); *see also Anderson v. Boeing Co.*, 222 F.R.D. 521, 531 (N.D. Okla. 2004) (same, citing *Esplin*); *Harrington v. City of Albuquerque*, 222 F.R.D. 505, 508-09 (D.N.M. 2004) (same).

Fed. R. Civ. P. 23(a). As plaintiffs demonstrate below, all four requirements of Rule 23(a) are easily met in this case.

### (a)      Numerosity – Rule 23(a)(1).

Rule 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." There can be no doubt that the proposed class satisfies this requirement.

The undersigned has been informed that the class consists of over 100 persons. This should easily satisfy the requirements of Rule 23(a)(1).[5]

### (b)      Commonality – Rule 23(a)(2).

Rule 23(a)(2) "requires only a single question of law or fact common to the entire class."[6] On this reason, the commonality requirement is "easily met."[7]

In this case, common issues of fact and law abound. These common issues include the following:

        i.      Whether Sandy Hutchens caused CFC, FCMF or 308 Elgin, as the case may be, to issue loan commitments to Plaintiffs and members of the Class.

---

[5] *See Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978) ("Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class"); *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275-76 (10th Cir. 1977) (trial court erred in denying class certification on numerosity grounds where class consisted of between 41 and 46 persons).

[6] *D.G. ex rel. Stricklin v. Devaughn,* 594 F.3d 1188, 1195 (10th Cir. 2010).

[7] 1 Herbert B. Newberg, Newberg on Class Actions § 3.10, at 274 (4th ed. 2002) (hereinafter "Newberg").

ii.     Whether CFC, FCMF, 308 Elgin and FCH are alter egos of Sandy Hutchens.

iii.    Whether Tanya Hutchens wrote all or virtually all of the loan commitment letters.

iv.     Whether Tanya Hutchins owns the Doe Limited 1 – 100 entities.

v.      Whether the net proceeds of the advance fees paid by Plaintiffs and members of the Class were transferred to Tanya Hutchens, accounts controlled by her or to Doe Limited 1 – 100.

vi.     Whether Plaintiffs and members of the Class advanced monies to Defendants or for the benefit of Defendants.

vii.    Whether a conspiracy existed between the Defendants to further the efforts of Sandy Hutchens to issue fraudulent loan commitments and collect advance fees from Plaintiffs and members of the Class.

viii.   Whether Sandy Hutchens was aided and abetted by the other Defendants in the issuance of fraudulent loan commitments and collect advance fees from Plaintiffs and members of the Class.

ix.     Whether through concerted action by all of the Defendants, Sandy Hutchens was enabled to issue fraudulent loan commitments and collect advance fees from Plaintiffs and members of the Class.

x.      Whether either CFC, FCMF or 308 Elgin, either directly or through any other lender, had the capacity to fund the loan commitments as and when made.

xi.      Whether statements made by Defendants to the Plaintiffs and members of the Class failed to disclose material facts about the business, operations and management of CFC, FCMF and 308 Elgin.

xii.     Whether Defendants, directly, indirectly and by means of a conspiracy, in an enterprise composed of an association in fact, knowingly participated in a pattern of racketeering activity that affected interstate or foreign commerce in violation of 18 U.S.C. §1962(c).

xiii.    Whether Sandy Hutchens, in concert with the other Defendants, found, in every instance, an excuse as to why the loan commitment could not be funded and kept the monies advanced.

xiv.     To what extent the Plaintiffs and members of the Class have sustained damages and the proper measure of damages.

xv.      Whether the net proceeds of the advance fees paid by Plaintiffs and members of the Class have been transferred away from FCH, CFC, FCMF and 308 Elgin to Tanya Hutchens and Doe Limited 1 – 100 and so commingled so as to give Plaintiffs and members of the Class pro rata claims to all of such funds and the properties purchased therewith.

Whatever variation there is among class members on factual issues, they pale in comparison to the common issues of law as well as fact which apply across the persons who dealt with the Defendants. "[f]actual differences between class members' claims do not defeat certification where

common questions of law exist."[8]  Plaintiffs have alleged that the injuries and threatened injuries detailed in the Complaint—both those of the named plaintiffs and those of the class—stem from a single scheme of issuing loan commitments under various names which were controlled by Sandy Hutchens and members of his family.  This fact alone requires a finding of commonality.[9]

The controlling questions of fact and law in this case are common to the entire class.

**(c)     Typicality – Rule 23(a)(3).**

Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." In this case, the claims asserted by the class representatives coincide precisely with the claims asserted on behalf of the class.

Although the challenged policies and practices may affect different class members in different ways, that does not defeat a finding of typicality. According to the leading treatise on class actions:

> Typicality refers to the nature of the claim or defense of the class representative and not to the specific facts from which it arose or to the relief sought. Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.[10]

---

[8]*Stricklin*, 594 F.3d at 1195.

[9]*See Skinner*, 209 F.R.D. at 488 (commonality requirement satisfied where "this case revolves around a common nucleus of operative facts, namely the policies and customs of the prison. regarding inmate-on-inmate violence").

[10]1 Newberg, § 3.15, at 335.

The Tenth Circuit has often reiterated the well-settled principle that individual factual differences do not defeat typicality. "[T]ypicality exists where, as here, all class members are at risk of being subjected to the same harmful practices, regardless of any class member's individual circumstances."[11]  That is precisely the case here.  Bogus loan commitments were issued by one or the other of the entities under the control of Sandy Hutchens and his family.  None of these entities had the capacity to make the loans which had been committed.  The entities were without substance and existed in name only.  The advance fees paid have been transferred out of the entities, leaving nominal money in the bank.  The claims of the class representatives are based on the same legal theory as the claims of the class members – that their claims are typical of everyone else in the class.  Thus the typicality requirement is met.

### (d)    Adequacy of Representation – Rule 23(a)(4).

Adequacy of representation involves two inquiries: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[12]  These criteria are clearly satisfied in this case. There is no conflict between plaintiffs or their counsel and other class members.  Plaintiffs are represented by an attorney who is experienced in class action cases in general and class actions involving fraud.

---

[11]*Stricklin*, 594 F.3d at 1199; *see also Adamson*, 855 F.2d at 676 ("differing fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory").

[12] *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)).

3.      **Class Certification Is Appropriate Pursuant to Fed. R. Civ. P. 23(b).**

In addition to meeting the four criteria of Fed. R. Civ. Pro. 23(a), at least one factor set forth in Fed. R. Civ. Pro. 23(b) must be met.  As shown below, the instant case satisfies each one of the Rule 23(b) criteria.

(a)      **The Factors Set Forth in Fed. R. Civ. P. 23(b)(1) Have Been Met.**

The adjudication of liability by any one of the Plaintiffs and members of the Class would effectively dispose of the claims by the rest of the Plaintiffs and members of the Class.

(b)      **The Factors Set Forth in Fed. R. Civ. P. 23(b)(2) Have Been Met.**

Certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) when the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2). "The writers of Rule 23 intended that subsection (b)(2) foster institutional reform by facilitating suits that challenge widespread rights violations of people who are individually unable to vindicate their own rights."[13]  Recognizing these principles, the Tenth Circuit has explained that Rule 23(b)(2) is "well suited" to cases in which "plaintiffs attempt to bring suit on behalf of a shifting prison population."[14]

The Tenth Circuit recently summarized the requirements of Rule 23(b)(2):

> Rule 23(b)(2) imposes two independent, but related requirements upon those seeking class certification. First, plaintiffs must

---

[13]*Baby Neal v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994).

[14]*Shook v. El Paso County*, 386 F.3d 963, 972 (10th Cir. 2004) (*Shook I*).

- 13 -

demonstrate defendants' actions or inactions are based on grounds generally applicable to all class members. Second, plaintiffs must also establish the injunctive relief they have requested is appropriate for *the class as a whole.* Together these requirements demand cohesiveness among class members with respect to their injuries[.] This cohesiveness, in turn, has two elements. First, plaintiffs must illustrate the class is sufficiently cohesive that any classwide injunctive relief satisfies Rule 65(d)'s requirement that every injunction "state its terms specifically; and describe in reasonable detail ... the act or acts restrained or required." Second, cohesiveness also requires that class members' injuries are sufficiently similar that they can be remedied in a single injunction without differentiating between class members. Rule 23(b)(2)'s bottom line, therefore, demands at the class certification stage plaintiffs describe in reasonably particular detail the injunctive relief they seek such that the district court can at least conceive of an injunction that would satisfy Rule 65(d)'s requirements, as well as the requirements of Rule 23(b)(2).[15]

These requirements are amply satisfied in this case. All class members have suffered the same injury: monies that they advanced as advance fees to entities under the control of Sandy Hutchens and his family; monies that they advanced or paid for an "inspection" required by Sandy Hutchens; monies that they advanced to pay legal fees of lawyers that had been hired by Sandy Hutchens; monies that they paid to third parties in order to comply with requirements of the bogus loan commitments; and other fees, costs and damages of the like.  Plaintiffs have described an injunction that would remedy all class members' injuries, and that satisfies the strictures of Rule 65(d). See Complaint, Prayer for Relief (asking that the Court for a "mandatory injunction imposing a constructive trust on the assets of Defendants Sandy Hutchens, Tanya Hutchens, Jennifer Hutchens, Canadian Funding Corporation, 308 Elgin Street Inc., First Central Mortgage Funding Inc., First

---

[15]*Stricklin*, 594 F.3d at 1199-1200 (internal quotation marks, citations, brackets omitted).

Central Holdings Inc., and Doe Limited 1 – 100, ordering said Defendants to turnover such assets to Plaintiffs and members of the Class. This is not a case in which "redressing the class members' injuries requires time-consuming inquiry into individual circumstances or characteristics of class members . . . ."[16] Rather, Plaintiffs seek, on behalf of themselves and all others similarly situated, a return of the money that they advanced or the property that the Defendants bought with it.  This is entirely consistent with other cases in which (b)(2) certification has been approved by the Tenth Circuit, plaintiffs here "concretely ask that the defendants be ordered to cease certain behaviors."[17] The requirements of Rule 23(b)(2) are satisfied.

<b>(c)      The Factors Set Forth in Fed. R. Civ. P. 23(b)(3) Have Been Met.</b>

Class certification is also appropriate pursuant to Fed. R. Civ. Pro. 23(b)(3) in that common issues of fact and law predominate over questions affecting only individual members.  In addition, treatment of the claims of the Plaintiffs and members of the putative class under Fed. R. Civ. Pro. 23 is superior to individual cases.

Predominance is primarily a question of liability.[18]  The liability of the Defendants is based upon the RICO violations by Defendants, whether they be direct violations or through a conspiracy. Sandy Hutchens and members of his family, Tanya Hutchens and Jennifer Hutchens, managed the

---

[16]*Shook v. El Paso County,* 543 F.3d 597, 604 (10th Cir. 2008) (*Shook II*), or in which plaintiffs request injunctive relief "that simply prescribes 'adequate' or appropriate' levels of services," *Id*. at 606.

[17] *Id*. at 609.

[18]*Klay v. Humana, Inc*., 382 F. 3d 1241, 1255-1260 (11th Cir. 2004).

Defendant entities, CFC, 308 Elgin and FCMI, in the issuance of bogus loan commitments.  The lawyers and law firms assisted Sandy Hutchens in perpetrating this fraud by vouching for him as a bona fide lender and failing to disclose his criminal past.  Defendant Luisterman, as a realtor employed by Realty 1, "inspected" the properties for which he was paid.  He never disclosed the fact that the enterprise, as defined in the First Claim for Relief, did not close the loans committed.  The monies advanced by Plaintiffs and members of the Class were transferred out of the entities to which they were paid to the lawyers and law firms as legal fees and to entities under the control of Tanya Hutchens.  And, as the monies were so transferred, they were commingled in the cash that was so transferred or the properties purchased therewith.

All of the foregoing facts are common to the Plaintiffs and members of the Class, all of them establish liability as to each and every Plaintiff and member of the Class, and adjudication of the common issues of fact and law arising from the claims asserted will establish liability, or not, as to each and every Defendant.  Unquestionably, the requirement of predominance is met.

Class treatment of the claims asserted is superior to the litigation of individual claims.  This is so for the reason that the claims, if individually litigated, would require the same witnesses, the same documents, and the same questions of law and procedure.  At the conclusion of individual trials, assuming that the claimants won, it would be an impossible task of an orderly liquidation of the monies that were advanced and the properties purchased therewith.

Considering the foregoing, the requirements of predominance as well as superiority have been satisfied.[19]

### 4.     The Court Should Appoint the Undersigned as Class Counsel.

Fed. R. Civ. P. 23(g)(1) provides that "unless a statute provides otherwise, a court that certifies a class must appoint class counsel."

> Factors relevant to the appointment of class counsel are the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class.[20]

All of these factors militate in favor of appointing the undersigned as class counsel. As already noted, the undersigned counsel is thoroughly familiar with the applicable law and have extensive experience in handling class actions.

Dated this ___ day of April, 2011.

HEAD & ASSOCIATES, P.C.

By: _____

John F. Head, No. 3077
1860 Blake Street, Suite 300
Denver, Colorado 80202
Telephone: 303-623-6000
Telecopier: 303-623-4211

---

[19]*See, e.g., Klay v. Humana, Inc.*, 382 F. 3d 1241, 1255-1260 (11th Cir. 2004).

[20]*Maez v. Springs Automotive Group, LLC*, ___ F.R.D. ___, 2010 WL 2543553, at *6 (D. Colo. 2010).