IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01012-RBJ-KLM

CGC HOLDING COMPANY, LLC, a Colorado limited liability company;
CRESCENT SOUND YACHT CLUB, LLC, a Florida limited liability company;
HARLEM ALGONQUIN LLC, an Illinois limited liability company; and
JAMES T. MEDICK; on behalf of themselves and all others similarly situated,

       Plaintiffs,

v.

SANDY HUTCHENS, a/k/a Fred Hayes, a/k/a Moishe Alexander, a/k/a Moshe Ben Avraham; et al.,

       Defendants.

_____

## ORDER

_____

This matter is before the Court on the following pleadings:

- **Plaintiffs' Motion for Sanctions Against the Hutchens Defendants and Motion to Compel Discovery From Defendant Sandy Hutchens** (the "Motion") [#564][1];

- **Hutchens Defendants'[2] Response to Plaintiffs' Motion to Compel and for Sanctions** [#574];

- **Reply Brief in Support of Plaintiffs' Motion for Sanctions Against the Hutchens Defendants and Motion to Compel Discovery From Defendant Sandy Hutchens** [#582];

---

[1]  [#564] is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  The Court uses this convention throughout this Order.

[2]  Plaintiffs define "the Hutchens Defendants" as Sandy Hutchens, Tanya Hutchens, Jennifer Hutchens and the Hutchens Entities.  *Motion* [#564] at 5.  The "Hutchens Entities" are loosely defined as a group of 21 Canadian corporations, 3 unspecified corporations, the Estate of Judith Hutchens and "JBD Holdings."  *Id.* at 4-5.  The written discovery requests and responses attached to the Motion were directed to Defendant Sandy Hutchens. [#564-3, #564-4, #564-5, #564-11, #564-12].

- **Hutchens' Sur-Reply to Plaintiffs' Motion for Sanctions and to Compel Discovery** [#594];

- **Plaintiffs' Request for a Ruling as to Their Motion for Sanctions Against the Hutchens Defendants and Motion to Compel Discovery From Defendant Sandy Hutchens** [#606];

- **Hutchens Defendants' Joinder in and Response to Plaintiffs' Motion for a Ruling on their Sanctions Motion and Motion to Compel** [#610];

- **[Plaintiffs'] Status Report Regarding Hutchens Defendants' Failure to Produce Accounting Records and Plaintiffs' Continuing Request for a Ruling as to Their Motion for Sanctions Against the Hutchens Defendants and Motion to Compel Discovery from Defendant Sandy Hutchens** [#619];

- **Hutchens Defendants' Response to Plaintiffs' Status Report and Repeated Joinder for Ruling on Sanctions Motion** [#622];

- **[Plaintiffs'] Response to the Court's Minute Order and Further Status Report Regarding Hutchens Defendants' Failure to Produce Accounting Records and Plaintiffs' Continuing Request for a Ruling as to Their Motion for Sanctions Against the Hutchens Defendants and Motion to Compel Discovery from Defendant Sandy Hutchens** [#640];

- **[Hutchens Defendants'] Response to Court's Minute Order re Sanctions Motion** [#643];

- **Plaintiffs' Submission of Lapedus Testimony and Response to Hutchens Defendants' Supplement** [#646]; and

- **The Hutchens Defendants' Submission of Lapedus Testimony** [#647]

(collectively, the "Relevant Pleadings.")   The Court has reviewed the Relevant Pleadings, the entire docket, and the applicable law and is sufficiently advised in the premises.   A hearing was held on the Motion on February 8, 2016.   For the reasons discussed below, the Motion [#564] is **GRANTED in part and DENIED in part**.

## I.  Factual Background

As described by the District Judge, the allegations involved in this case are as

follows:

> Plaintiffs contend that they were swindled by Sandy Hutchens and related individuals and entities, with the assistance of Canadian and American lawyers and a Canadian realtor.  The gist of it is that Hutchens and his associates falsely represented that he was able and willing to make numerous, large commercial loans to more than 100 borrowers in the United States; that they were able to bilk prospective borrowers who thought they were dealing with legitimate lenders out of something in the range of eight million dollars of loan application or 'advance fees;' and that in support of the scheme they failed to disclose Hutchens' identity and his criminal history but instead perpetrated the fraud by disguising Hutchens through a number of different aliases and the use of corporations that were mere shells.

> With perhaps one or two exceptions, loan commitments were not filled. That, however, is not the focus of the case.  Plaintiffs have stipulated for purposes of this case that there were legitimate reasons on which a bona fide lender could have declined the loans.  Plaintiffs' focus is on the advance fees that were paid on allegedly false pretenses but never returned.  They assert claims based on RICO as well as state common law theories.

*See Order on Pending Motions - No. 3* [#406] at 1-2.

## II.  Procedural Background

The length of time required to address the discovery dispute at issue in this Order is partially the result of the case's unusual procedural path, and partially the result of other factors over which the Court had little control.  The information at issue here was originally the subject of Plaintiffs' Motion to Compel [#255], filed in October of 2012.  In their 52-page motion attaching 398 pages of exhibits, Plaintiffs sought a wide variety of information from Defendants Sandy Hutchens, Tanya Hutchens, Jennifer Hutchens and the Hutchens Defendants, ranging from identification of lawyers, accountants, rabbis, synagogues, banks and bank accounts to production of bank statements and accounting records. [#255].  The District Judge granted the Motion after a hearing held in March of 2013, generally ordering the named Defendants to provide all of the requested information except that which they

asserted was protected by some type of privilege, and specifically ordering them to produce loan files "forthwith." [#406] at 32-33.

In June of 2013, Plaintiffs sought a status conference for the purpose of informing the District Judge about their unsuccessful efforts to obtain the information they were seeking from Defendants [#467], but the status conference was not held because the case was stayed pending appellate review of the Order granting class certification [#494]. Almost two years later, in March of 2015, Plaintiffs "renewed their efforts" to secure the missing information from the Hutchens Defendants, [#646] at 7, but the result of those efforts was ultimately unsatisfactory, so they filed the Motion at issue here on September 28, 2015.  [#564].

As is evidenced by the titles of the Relevant Pleadings alone, the parties grew increasingly impatient for a ruling, despite the Hutchens Defendants' on-going supplementation of their written discovery responses. Further complicating – and delaying – the matter is that the District Judge has handled the many burdens of this case almost singlehandedly, thus reducing the need and opportunity for the undersigned Magistrate Judge to follow its tortured history and understand the parties and claims.  Also, because the information at the heart of the dispute was first sought by Plaintiffs in July of 2012 and Defendants have "responded" to Plaintiffs' discovery requests multiple times since, a decision about the propriety of the responses has required the Court to review thousands of pages of pleadings and documents to determine whether the situation is as bad as Plaintiffs or as innocuous as Defendants suggest.  Indeed, Plaintiffs have unfailingly sought the harshest sanction available for the Hutchens Defendants' alleged discovery abuses, i.e., entry of default judgment.   Under these circumstances — a unique and lengthy

procedural history including a roughly three-year hiatus between the initial posing of discovery requests and the request for court intervention at issue here, voluminous, unfocused, repetitive and increasingly ardent pleadings, a thousand-plus page paper trail, limited involvement of the Magistrate Judge, and a request for the "death penalty" sanction – the need for a thorough and time-consuming review should be manifest.

## III.  Analysis

### A.    The Relevant Pleadings

At its simplest, this dispute boils down to Plaintiffs' contention that they have legitimately sought and need certain documents from the Hutchens Defendants to prove their case, and the Hutchens Defendants' contention that they have provided all responsive documents in their possession, custody and control, albeit over an extended period of time. In the undersigned's experience, this is the most difficult of discovery disputes for two reasons: first, it demands a thorough understanding of numerous facts and events, including what information was sought,  what information was provided, the dates when information was provided, what information was not provided, whether the information not provided was properly sought in the first place, and why any properly sought information was not provided.  If the answer to the last inquiry is because the responding party contends that he no longer has the information or never had it, another set of questions arises:  Why didn't he have it in the first place? If he did have it but doesn't have it now, what happened to it? And can he be believed?

The second reason why this is the most difficult of discovery disputes is because one party is seeking (at least in part) information that the opposing party contends simply

doesn't exist. Judges, who lack access to the actual documents produced (here, according to Defendants, "44 bankers boxes" worth), magic wands, time machines, x-ray vision and the higher powers of the Almighty, are not well equipped to decipher whether specific information exists, ever existed, or was actually produced, especially in the context of the parties' conflicting arguments and points of view.

The Relevant Pleadings are a hodgepodge of information and arguments relating to the inquiries outlined above.  In addition, the Motion presents a moving target due to the Hutchens Defendants' on-going supplementation of discovery responses as the briefing on the Motion continued unabated.  By way of example, Plaintiffs have offered an ever-narrowing list of the information they are seeking from Defendant Sandy Hutchens.  In the original Motion [#564], they referred to the following information which they contended was either not provided or not fully provided:

(1)    documents to support the Hutchens Defendants' alleged track record of making hundreds of loans amounting to millions of dollars (p.6);

(2)    documents to support "the accuracy of [the Hutchens Defendants'] claimed track record of making loans" (p.6);

(3)    "information to support the representations made [by Defendants] on the internet" (p.7);

(4)    "information as to whether or not the assets listed [on a Financial Statement dated December 5, 2009] actually existed" (p.9);

(5)    "identity of persons to whom were issued loan commitments" (p.9);

(6)    "which loan commitments were closed by funding of a loan" (p.9);

(7)    "sources of funding for any loan closed" (p.9);

(8)    "any source of funding to whom a loan application by a class member has been submitted for consideration or who had expressed an interest in funding the loan" (p.9);

(9)    identity of "any lender who loaned money to any Hutchens Defendant" (p.9);

(10)    "communications with any funding source with respect to any loan commitment issued" (p.9);

(11)    all of the aliases used by Sandy Hutchens (p.11);

(12)    identity of all of the entities owned or controlled by Sandy Hutchens (p.11);

(13)    facts on which the Hutchen Defendants relied to deny Plaintiffs' requests for admission (pp.12-13);

(14)    identity of the Hutchens Defendants' accountants (p.14);
(15)    identity of the custodian of the Hutchens' Defendants accounting records
         (p.14);
(16)    identity of banks or other financial institutions where the Hutchens
         Defendants' accounts were maintained (p.14);
(17)    amount of advance fees paid by each person to whom a loan commitment
         was issued, when paid and how paid (p.14);
(18)    identity of every person to whom monies paid as advance fees were
         transferred (p.14);
(19)    dates and amounts of money transferred and identity of transferees (p.14);
(20)    bank statements, including cancelled checks (p.14);
(21)    accounting records (p.14);
(22)    financial statements (p.14); and
(23)    information regarding 136 reference letters (p.18).

Six weeks later, in the Reply [#582], Plaintiffs referred to the following information

which they contended was either not provided or not fully provided:

(1)    identity of every person in the U.S. who was issued a loan commitment in the
        Relevant Period[3] (p.7);
(2)    for each such person, the amount of money paid or advanced as deposit for
        fees and the identity of the bank account into which the fees were deposited
        (p.7);
(3)    for each payment of fees, identity of the person to whom fees were paid, date
        of payment, amount of payment, through whom payment was made, and the
        means of transmission of the payment (pp.7-8);
(4)    identity of every co-Defendant, lawyer, law firm, realtor, loan broker or other
        person to whom payments were made, date and amount of payments, and
        identity of person who paid advance fees for each transfer (p.8);
(5)    value of the assets listed on Defendants' December 5, 2009 Financial
        Statement and whether the asset existed as of that date (p.15);
(6)    documents that support claims made on the December 5, 2009 Financial
        Statement (p. 15);
(7)    information regarding claims made on Defendant CFC's website (p.18);
(8)    identities of Defendant CFC's investors (p.22); and
(9)    identification of the private funds referred to in the CFC website (p.22).

A little more than one month later, in the subsequent Request for Ruling [#606],

Plaintiffs referred to the following information which they contended was either not provided

---

[3] Plaintiffs' discovery requests define the Relevant Period as January 1, 2004 through the present.
[#564-3] at 1. More about this below.

or not fully provided:

(1)     identification of all aliases used by Hutchens in connection with loan commitments (p.2);
(2)     identification of all class members to whom Hutchens Defendants issued loan commitments (p.2);
(3)     identification of all banks where money paid by class members was wire transferred or otherwise paid (p.3);
(4)     all bank records for the accounts that received such funds (p.4);
(5)     all accounting records for each of Hutchens Defendants (p.4); and
(6)     all loan files for class members (p.5).

Twenty days later, in the Status Report [#619], Plaintiffs complained that they still hadn't received the Hutchens Defendants' accounting records. *Id.* at 3. Twenty-five days after that, in their Further Status Report [#640], they referred to the following information which they contended was either not provided or not fully provided:

(1)     Hutchens Defendants' accounting records (p.2);
(2)     bank records, including cancelled checks (p.4);
(3)     financial statements, balance sheets, income and expense statements (pp. 4 and 8);
(4)     full set of Snap accounting records (p.7);
(5)     Snap ledgers (p.8);
(6)     tax returns (p.8);
(7)     records relating to specified Hutchens' entities (p.8); and
(8)     records relating to specified Hutchens' properties (pp.9-10).

Finally, in their last pleading devoted to this subject filed two weeks later, (Response to Defendants' Supplement [#646]), Plaintiffs complained that they had not received the Hutchens Defendants' files on loan commitments issued after March 2011. *Id.* at 5 n.4.

Suffice it to say that despite their frequency, Plaintiffs' pleadings leave much to be desired in terms of identifying the information which remains in contention, explaining how and why certain information is no longer in contention, and addressing how the request for sanctions is thereby impacted. In short, a simple comparison of the information sought by Plaintiffs in their original Motion to the information sought in their most recent filing leads

to the inescapable conclusion that one of the following has occurred: (a) Defendants have produced most of the information originally requested; or (b) Plaintiffs have decided not to pursue most of the information originally requested.  Regardless, Plaintiffs continue to fervently seek the most severe of discovery sanctions, entry of default judgment in their favor.  Their fervor is confusing, because regardless of whether (a) or (b) above has occurred, pursuit of a death penalty sanction in either circumstance is simply not reasonable.  This conclusion is discussed in more detail in Section III.D. below.

For their part, the Hutchens Defendants have not impressed the Court with honesty and promptness in their responses to Plaintiffs' discovery requests.  Their initial response to Plaintiffs' contentions sought sympathy and understanding.  First, they self-identified as a "one-man small business and his wife's separate and independent single-purpose real estate entities" who were struggling to respond to "25 separate sets of detailed interrogatories . . . after their ex-accountant, Marty Lapedus, absconded with the responsive accounting records to avoid being sued by plaintiffs himself." *Response* [#574] at 1.  They asserted that the lack of accounting records was equally frustrating to them, "because they do not possess the records with which their ex-accountant absconded that would allow them *to disprove plaintiffs' theory* that tainted and intermingled proceeds purchased readily identifiable local properties." *Id.* at 3 (emphasis added).[4]  They added that "with the exception of one file that they have identified as inadvertently not produced,

_____

[4] The Court notes that the Hutchens Defendants' assertion that they must "disprove Plaintiffs' theory" is rather breezy, as there is no legal basis for the contention that they have the burden of proving anything other than their affirmative defenses in this matter. Their Answer [#185] identifies a variety of boilerplate affirmative defenses and  generally denies that they engaged in a scheme under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  However, the burden of proof on the RICO claim rests squarely on Plaintiffs.  *CGC Holding Co., LLC v. Broad and Cassel,* 773 F.3d 1076, 1093 (10th Cir. 2014).

they have produced all of the loan files that they have and know to exist." *Id.* at 2.  They further promised to provide "a comprehensive supplement to their discovery responses" in late October of 2015.  *Id.* at 7.

A couple of weeks later, Plaintiffs asserted that the Hutchens Defendants' "comprehensive supplement" was "woefully incomplete." *Reply* [#582] at 5.  They pointed out that the supplement contained a noticeable lack of information about Mr. Lapedus' alleged theft of accounting records while also disclosing, for the first time, that more recent accounting records were in the possession of a new accountant, Maury Posner ("Posner"), albeit without producing a single page of those records.  *Id.*  Plaintiffs further contended that the supplement ignored certain discovery requests and provided incomplete information as to others.  *Id.* at 10-13, 18-23.  They concluded that "instead of admitting what appears to be obvious . . . , the Hutchens Defendants and their counsel continue the charade that the Hutchens Defendants were legitimate lenders, with legitimate business partners, wasting time and money for the Plaintiffs as well as this Court." *Id.* at 24.  This statement may hint at the reason for Plaintiffs' indefatigable pursuit of a default judgment sanction.  Plaintiffs are convinced that the Hutchens Defendants are charlatans who defrauded them and who ought to pay the price, and they want Defendants to stop fighting the inevitable to save everyone time, energy and money.  If Defendants won't stop fighting, Plaintiffs want the Court to force them to do so.

But the Hutchens Defendants are clearly not ready to give up.  In their next pleading, they asserted that "Hutchens complied with his discovery obligations and provided documents that he has." *Sur-Reply* [#594] at 2.  They argued that he not only produced "complete loan files that were equally available to Plaintiffs, he extracted requested

information from these files." *Id.*  They asserted that they filled in some of the gaps in discovery responses mentioned by Plaintiffs by conferring with counsel and by further amending their supplemental responses.  *Id.* at 5-6.  They argued that copies of their banking records for closed accounts are "equally available to Plaintiffs by subpoena" and would cost hundreds of thousands of dollars for Defendants to obtain from the bank.  *Id.* at 7.  They disputed Plaintiffs' contention that the new accountant, Mr. Posner, was only recently disclosed, indicating that he had filed an affidavit in the case more than three years earlier. *Id.* at 8.  They further asserted that Mr. Hutchens had filed an affidavit with the court three years earlier alleging that "Mr. Lapedus took my accounting files and those of the entities owned and operated by me and provided them to third parties without my consent or permission." *Id.* at 9.  They contended that Plaintiffs' misinterpretation of statements made on a website amounted to "a dispute over the merits [of the case], not discovery compliance." *Id.* at 12.  They agreed to produce accounting records in the possession of Mr. Posner.  *Id.* at 14.   Finally, they bemoaned Plaintiffs' counsel's perceived lack of industry:

> Plaintiffs, who have had the identical loan records as Hutchens for over two and a half years, have apparently made no effort to extract and compile the relevant information on their own . . . . Although Hutchens thoroughly combed the bank files in detail . . . , he acknowledges that he has not yet finished double-checking the accuracy of the extracted information that (again) has been equally available to plaintiffs for years.  Plaintiffs basically complain that they do not believe that Hutchens has done their job accurately enough. Although the Hutchens Defendants went the extra mile, they are not required to prove any part of plaintiffs' entire case for them.

*Id.* at 10-11.

Plaintiffs remained unrelenting.  In their Request for Ruling [#606], they insisted that the Hutchens' Defendants still hadn't provided a list of all of Mr. Hutchens' aliases, a list of

all class members to whom Defendants issued loan commitments, identification of all banks where monies paid by class members were transferred, bank records, accounting records, and all loan files.  The Hutchens Defendants retorted that the loan files, all except one of which were already produced, contained all aliases used by Mr. Hutchens with class members, the Hutchens entities did not operate after July of 2012 and lacked bank accounts after that time, they had produced all bank records in their possession, custody or control, they never possessed any computerized set of accounting records and, regardless, had produced all accounting records except those maintained by Mr. Posner, which would be produced after "pre-production processing and review by Hutchens' counsel."  They asked: "Why seek sanctions (including the most severe sanction of a default judgment) based on innuendo, assumption, pretext and falsehoods?  Why take no action to obtain vital bank records? . . . . When the merits look shaky, short-circuiting them makes sense."  *Joinder* [#610] at 1-4.

On January 4, 2016, Plaintiffs "regretfully" informed the Court that "notwithstanding the passage of ***46 days*** since the Status Conference held on November 19, 2015, not one piece of paper representing the accounting records held by Toronto accountant Posner has been turned over to Plaintiffs."  *Status Report* [#619] at 3 (emphasis in original).  They continued to assert that they have been "severely prejudiced" by the Hutchens Defendants' delays.  *Id.*  According to the Hutchens Defendants, they produced the Posner accounting records three days later.  *Response to Status Report* [#622] at 1.

When the undersigned set the on-going discovery war for a final in-court battle on

February 8, 2016, Plaintiffs took the opportunity to file yet another uninvited "status report,"[5] laying out the chronology of the accounting records dispute, pointing out that the records weren't produced until "*fifty days*" after the District Judge held a hearing in which the Hutchens Defendants' counsel stated that he would produce the records "*as quickly as I can arrange it*," and repeating the history of their efforts to obtain the Hutchens Defendants' financial records "from July 2012 through November 19, 2016."[6]   *Status Report* [#640] at 3-7 (emphasis in original).   Plaintiffs attempted to cut to the chase by illuminating how the Hutchens Defendants' misconduct had prejudiced them: by leaving them bereft of the evidence necessary to establish their constructive trust "claim," bereft of computerized accounting records that they "know" must exist based on production of snippets of those records, and bereft of records to show where $2,000,000 in "advance fees" went.   *Id.* at 10-12.

If it isn't already obvious, this war includes a micro-battle over who takes the last shot.   Not to be deprived, the Hutchens Defendants filed an uninvited Response to Plaintiff's Status Report [#643] in which they made these points: (1) a Canadian court approved Letters Rogatory in the fall of 2015.   "These letters authorized plaintiffs to subpoena all bank records for any Hutchens Defendant from the only bank at which they had accounts: TD Bank."   Plaintiffs did not do so.   (2)   Mr. Posner provided defense counsel with documents on December 17, 2015.   "The Hutchens Defendants produced

---

[5]   The purpose of the "status report" may have been to educate the undersigned because the District Judge had been primarily involved in adjudicating the parties' prior discovery skirmishes.   Nevertheless, if so, Plaintiffs apparently concluded that I wouldn't read their voluminous prior pleadings.   Needless to say, that conclusion was unwarranted and incorrect.

[6]   The Court assumes the concluding year is a typographical error, although it certainly feels as if it has been at least that long.

them to plaintiffs three weeks later, despite a Canadian deposition in this case on Friday, December 18th, associated international travel, and the intervening Christmas/Holiday period." Besides that, Posner's deposition wasn't scheduled for another month and trial is set for June. *Id.* at 1-3. The Hutchens Defendants' supplemented their Response two days later (the day before the hearing), providing a chart showing that certain of the properties at issue had been sold and purporting to show that the dispute over their allegedly incomplete discovery responses boils down to "whether plaintiffs are entitled to documents outside of the class period." [#644] at 1-2; [#644-1]. Finally, with permission of the Court after the hearing, the parties submitted excerpts from the deposition of Martin Lapedus to shed light on the Hutchens Defendants' contention that he stole their accounting records. [#646; #647].

The Court is mindful that the Motion seeks dual relief: sanctions and "an Order compelling Defendant Sandy Hutchens to provide complete responses(s) (sic) to Plaintiffs' Second Set of Written Discovery served in September 2012." *Motion* [#564] at 5. In light of that, I have carefully reviewed the Relevant Pleadings and considered the parties' arguments in an effort to determine which of the discovery requests, if any, the Hutchens Defendants have failed to adequately respond to. My conclusions in that regard are contained in section III.B. below. Following those conclusions, I have applied the law to determine whether sanctions are appropriate. The sanctions discussion is found in sections III.C. and D.

**B.     Adequacy of the Hutchens Defendants' Discovery Responses**

**(1)     The Loan Files**

Despite the number, length and verbosity of the pleadings filed by Plaintiffs relating

to the Motion, they contain surprisingly little reference to the contents of the 44 bankers' boxes of loan files produced by the Hutchens Defendants.  Plaintiffs admit that "loan files were produced for over 100 persons and entities that are within the Class definition." *Motion* [#564] at 12.  However, the overwhelming focus of Plaintiffs' arguments is on documents and information *not* produced by the Hutchens Defendants.  In so arguing, Plaintiffs fail to illuminate the contents of the loan files that were produced by the Hutchens Defendants, fail to explain why they believe certain supposedly unproduced documents and information exists, and fail to acknowledge or entirely refute the Hutchens Defendants' repeated assertion that they have produced everything they have which is responsive to Plaintiffs' requests.

In short, Plaintiffs seem to have overlooked the strong possibility that the Defendants (who they essentially accuse of <u>fraud</u>) *simply don't have* all of the documents and information one might expect to find in discovery relating to non-fraudulent loan transactions.  Documents and information which may not exist in light of the fraud alleged here, but which Plaintiffs nevertheless persisted in seeking, include:

- documents/information reflecting "that any loan application had been submitted to any funding source for  consideration to fund any part of any loan commitment," *id.* at 13;
- documents/information "regarding any loan commitment that had been closed," *id.;*
- documents/information relating to the purportedly bogus "Letters of Reference," *id.* at 21, 27-28;
- documents/information "tending to show that [Defendants] had the track record of making loans proclaimed on Internet websites and in letters of reference," *id.* at 29;
- documents/information relating to "each U.S. resident who received a loan commitment," *Reply* [#582] at 10;
- documents/information relating to "the fees paid by borrowers who received loan commitments," *id.* at 11-12;
- documents/information relating to Defendants' transfers of advance

fees to third parties, *id.* at 12-13;
- documents/information relating to the allegedly fraudulent December 5, 2009 financial statement,[7] *id.* at 15-18;
- documents/information relating to the lending history of Canadian Funding Corporation, *id.* at 18-24;
- bank records, *Request for Ruling* [#606] at 3; and
- loan files for loan commitments issued after March 2011. (This lawsuit accusing all Defendants of civil RICO violations was filed in April 2011. The likelihood that Defendants would retain documentary evidence relating to subsequent fraud is low.) *Id.* at 5.

Although Plaintiffs' frustration with Defendants' failure to timely respond to discovery requests and failure to produce information is undoubtedly genuine, they seem to have forgotten that the *lack* of certain evidence may be equally useful in presenting their claims. For example, lack of documents reflecting that loan applications were submitted to funding sources helps to establish the advance fee scam alleged here. *See, e.g., United States v. Austin*, 462 F.2d 724, 731 (10th Cir. 1972). Nevertheless, when all is said and done, the Relevant Pleadings reveal that the fight continues with respect to a certain set of documents, which are addressed below.

### (2) The Remaining Disputed Documents

First, the Motion makes clear that Plaintiffs seek the remaining documents from Defendant Sandy Hutchens. [#564] at 1. Plaintiffs' January 29, 2016 Status Report included a chart purporting to show which records remain outstanding after considering Mr. Posner's accounting records. [#640] at 8-12. On February 7, 2016, the Hutchens

---

[7] Plaintiffs' description of the information they received in discovery regarding this financial statement illustrates their repeated blind demand to fill a cup which is already overflowing. Plaintiffs acknowledge that in Defendant Sandy Hutchens' Second Supplemental Responses to Plaintiffs' First Set of Written Discovery, he admitted that the value of assets listed on the financial statement totaling in excess of $89 million dollars "was technically zero." Moreover, Plaintiffs also assert that they have information that the bank identified on the financial statement where the assets were allegedly deposited "does not exist." *Reply* [#582] at 16-17. Accordingly, the undersigned wonders whether further evidence of fraud with respect to the financial statement is necessary.

Defendants filed their own chart which purported to demonstrate "how thorough [their] production of Posner documents was and [] that plaintiffs' charges of incompleteness and other discovery skullduggery continue to rely on speculation that records exist and incomplete representations of the record." [#644] at 1;  [#644-1].

As a preliminary matter, the Hutchens Defendants generally argue that Mr. Hutchens should only be required to produce documents dated through the end of the class period, April 7, 2013.  *Id.; see also* [#406] at 22.  The Court disagrees.  Because the Class Period covers loan commitments made through April 7, 2013, it is apparent that records likely to show how the advance fees paid to secure those commitments were used, whether loans were actually made, the amount and terms of any such loans, and how, when, by whom and to whom loan funds were transmitted are likely to have been generated after April 7, 2013.  However, extension of Mr. Hutchens' discovery obligations to the present date is not rational, and Plaintiffs have offered no explanation to support it.  Extending the date for discovery of documents to one year after the Class Period takes into account a reasonable period of time to include post-loan commitment information to which Plaintiffs are entitled. The Court therefore rejects Plaintiffs' unsupported request for documents dated between January 1, 2004 and the present date.  Based on the chronology of events at issue in the case, Mr. Hutchens should be obligated to produce relevant records dated from January 1, 2004 through April 7, 2014.[8]

With that date range in mind, the Court addresses the categories of information

---

[8]  Of course, this holding does not presume that Mr. Hutchens possesses the documents sought by Plaintiffs for the entire date range of more than ten years.  "A document or thing is not in the possession, custody or control of a party if it does not exist." 8B Charles Alan Wright, et al., Federal Practice and Procedure § 2210 (2010).

which are the ultimate subject of the Relevant Pleadings in turn.

### (a)     Bank records

Plaintiffs seek "bank statements, including cancelled checks, for each bank account that was open during the Relevant Period, that was held in [Sandy Hutchens'] name or in the name of each and every one of the Hutchens' Entities during the Relevant Period." [#564-3] at 15.  The parties agree that these documents have not been produced.  The Hutchens Defendants assert that Plaintiffs have known since 2012 that these records were available by subpoena from the bank, and that Mr. Hutchens should be excused from producing them because doing so would be unduly burdensome. [#640] at 8; [#644-1] at 1.

The record shows that the Hutchens Defendants' counsel sent Plaintiffs' counsel an email on June 11, 2013 stating as follows:

> Lapedus possessed the bank records and many other documents that you have requested. I am informed that we cannot provide these without requesting them from the bank, and paying extensive fees.  As such, these records seem equally available to plaintiffs to subpoena.

[#564-7] at 6. The parties do not dispute that Mr. Lapedus provided certain documents pertaining to the Hutchens Defendants to the Royal Canadian Mounted Police ("RCMP"), who eventually turned the documents over to Plaintiffs. *See., e.g.*, [#564-9] at 4, 27-28. The parties *do* dispute whether Mr. Lapedus "stole" documents from the Hutchens Defendants, and by implication whether he turned over all documents in his possession to the RCMP.[9]  The Hutchens Defendants assert, as set forth above, that Mr. Lapedus at one point possessed some unspecified bank records.  They further assert that Plaintiffs could

---

[9]  The stolen documents dispute is addressed in section III.B.(2)(a) below.

have obtained the bank records by serving a subpoena on TD Bank, the only bank with which they did business on the loans at issue in the case.  [#594-7] at 2. They further allege "upon information and belief" that it will cost approximately $35,100 to obtain one year's worth of bank records for each of the "thirty-nine non-Lender entities, which Hutchens neither owns nor controls."  *Id.*  These assertions were made in supplemental discovery responses dated November 12, 2015. *Id.* at 7.

Plaintiffs have made no attempt to address the argument that the TD Bank records are equally available to them and that it would be unduly burdensome to require Mr. Hutchens to produce them.  They simply assert that it "cannot be true" that the TD Bank accounts were closed in 2012 and that the Hutchens Defendants had no subsequent bank accounts, "because over $500,000 in advance fees was wired, subsequent to July 2012, on loan commitments issued by Great Eastern Investment Fund."  [#640] at 11.  This assertion does little to illuminate the dispute over the bank records, however, as it fails to show that *Mr. Hutchens* had any bank accounts after July of 2012. It also raises more questions than it answers, like: (1) What does "Great Eastern Investment Fund" have to do with Mr. Hutchens and this case? (2) Who "wired" the $500,000 in advance fees?  (3) To whom were the advance fees "wired"? (4) How were any bank accounts involved? (5) Whose bank accounts were involved? (6) What is the basis for the assertion that any of Mr. Hutchens' bank accounts were involved?

Regardless, the fact remains that despite the Plaintiffs' dogged pursuit of the Hutchens Defendants' bank records, there is no factual basis on which the Court may find that Mr. Hutchens currently has such records in his possession or custody.  Plaintiffs' bald assertion that "it cannot be true" that the Hutchens Defendants had no other bank accounts

is insufficient to warrant an order compelling production of bank records, much less sanctions.  Further, to the extent that Mr. Hutchens may "control" the TD Bank account records, his control is not exclusive, as there is no basis for the Court to presume that service of a subpoena on TD Bank would be ineffective.  There is no suggestion that the Hutchens Defendants control TD Bank.  Moreover, "a party [upon whom a discovery demand is served] . . . need not seek documents from third parties if compulsory process against the third parties is available to the party seeking the documents."  *Nosal v. Granite Park LLC,* 269 F.R.D. 284, 290 (S.D.N.Y. 2010).  Finally, Plaintiffs have failed to offer a single argument against the Hutchens Defendants' assertion that it could cost them hundreds of thousands of dollars to obtain copies of the records from TD Bank for all of the Hutchens Entities.  In the absence of any such argument, the Court declines to compel Mr. Hutchens to produce these records.  *General Steel Domestic Sales, LLC v. Chumley*, No. 10-cv-01398-PAB-KLM, 2011 WL 2415715, at *2 (D. Colo. Jun. 15, 2011); *Harris Mkt. Research, Inc. v. Marshall Mktg. & Commc'ns, Inc.,* No. 86-2491-S, 1988 WL 215392, at *2 (D. Kan. Feb. 17, 1988).  Accordingly, the Motion to Compel Mr. Hutchens to produce bank records is **denied.**

**(b)    Snap Ledgers**

Plaintiffs assert that the Hutchens Defendants have failed to produce documents identified as "Snap ledgers."  They state:

> "The computerized accounting records included in the Lapedus Documents appear to be from Snap, a computerized accounting system, *that was apparently maintained by the Hutchens Defendants*.  While there was by no means a complete set of Snap records among the Lapedus Documents, there were enough pages to support the conclusion that each of the Hutchens Defendants had a general ledger as well as sub-ledgers that

> reflected assets and liabilities, income and expenses, and the movement of money in and out dubbed "Shareholder Advances. . . ." [T]he Snap ledgers show millions of dollars flowing through the Hutchens Entities and they show who (or what) the Hutchens Defendants recorded as having received the money."

*Further Status Report* [#640] at 6 (emphasis added). Plaintiffs attach examples of pages from the Snap ledgers to their Further Status Report [#640-1]. Several of these pages include the words "SNAP" or "SNAP Reporting System." [#640-1] at 6, 8, 9, 10, 11. The Hutchens Defendants agree that "these appear to be records of Marty Lapedus" and aver that they "did not use 'Snap' and have no idea what a 'Snap Ledger' is." *Supplement to Response* [#644-1] at 1. The Court has been directed to no evidence supporting Plaintiffs' conclusory statement that the Snap computerized accounting system was "maintained by the Hutchens Defendants" as opposed to by their former accountant, Mr. Lapedus.

### (l)    The "Lapedus Excuse"

The Hutchens Defendants' argument is essentially that if the "Snap ledgers" exist, they were created by their former accountant, Mr. Lapedus, and are not in the possession of Mr. Hutchens. They have repeatedly asserted as follows:

> The accounting records for the period of January 1, 2004 to   December 31, 2009 were in the possession of Marty Lapedus, who admittedly either destroyed them or provided them to third parties. Accordingly, the only accounting records available for this time period are the financial statements which counsel for Plaintiffs, John Head, provided to counsel for Hutchens, on June 12, 2013.

*Second Supplemental Response to Plaintiffs' First Set of Written Discovery to Sandy Hutchens* [#594-5] at 15. Plaintiffs have dubbed this response "the Lapedus excuse." *Reply* [#582] at 5. Plaintiffs contend that the Lapedus excuse is suspiciously belated, because the Hutchens Defendants first asserted it in a pleading filed on October 21, 2015

despite the fact that Lapedus' employment as the Hutchens Defendants' accountant ended

"following the 2009 year end." *Affidavit of Martin Lapedus* [#5-5] ¶ 12.   Plaintiffs further

bemoan the lack of any information relating to what, if anything, the Hutchens Defendants

did about Lapedus' alleged theft of their records.   *Reply* [#582] at 5.   In response, the

Hutchens Defendants contend that Mr. Hutchens filed an affidavit in October of 2012

stating that   "Mr. Lapedus took my accounting files and those of the entities owned and

operated by me and provided them to third parties without my consent or permission."

*Surreply* [#594] at 9.   Unfortunately, the affidavit they cite contains no such statement.

*Declaration of Sandy Hutchens Pursuant to 28 USC § 1746* [#284-1].   Although not

required to do so, the Court has scoured the electronic case docket for the affidavit and the

language relied on by the Hutchens Defendants but has found neither.   The case electronic

record includes three additional affidavits of Mr. Hutchens, none of which includes the

quoted language.   *Affidavit of Sandy Hutchens* [#594-2] at 1-2; *Affidavit of Sandy Hutchens*

[#602-6] at 1-2; *Declaration of Sandy Hutchens Pursuant to 28 USC §1746* [#399-1] at 1.

The affidavits of "Moishe Alexander," one of Mr. Hutchens' aliases, also contain no such

statement.   *Affidavit of Moishe Alexander* [#628-1] at 1-9; *Declaration of Moishe Alexander*

[#621-1] at 1.

For his part, Mr. Lapedus admits no inappropriate behavior.   He testified in a sworn

affidavit that he "stopped working for Hutchens and his related companies . . . because it

was becoming increasingly clear to me that Hutchens was back to his old criminal ways."

[#5-5] ¶ 12.   As to his involvement with the Hutchens Defendants' financial records, Mr.

Lapedus' affidavit (dated April 21, 2011) makes clear that at some point he had access to

voluminous records pertaining to the Hutchens Defendants.   The affidavit refers to the

following: Mr. Lapedus' "review of the accounting records of CFC (Defendant Canadian Funding Corporation);" Hutchens' failure to provide "any supporting documentation that the apparent value of various family holdings totals more than $89,000,000;" Mr. Lapedus' "review of the accounting documents of Hutchens;" Mr. Lapedus' filing of "the tax returns in 2005 and 2006;" Mr. Lapedus' "review of the accounting documents of Hutchens and his related companies;" Mr. Lapedus' "review of the accounting records and financial statements of Hutchens and his companies;" the fact that Mr. Lapedus took "numerous documents" to a meeting with TD Bank representatives; the fact that Mr. Lapedus "sent letters to third parties indicating that Mr. Hutchens and his companies had substantial funds available for mortgage financing;" the fact that Mr. Lapedus reviewed "the financial records of Hutchens (sic) companies;" the fact that Hutchens provided him "a document entitled a Co-Lender Agreement as between Advance Investors Interface Inc. and CFC" and his knowledge of a "Letter of Commitment" attached to that document. *Id.* ¶¶ 19(a), 25, 28, 29, 32, 33, 39, 42, 44, 45.

As to the allegedly purloined records, Mr. Lapedus' deposition testimony also admits very little. The Court explicitly invited the parties to submit excerpts of Mr. Lapedus' deposition testimony relating to his alleged theft of the Hutchens Defendants' accounting records. The Court has thoroughly reviewed these excerpts. The salient portions state as follows: (1) Hutchens provided Lapedus with "bank statements and deposit books and any supporting document that [Lapedus] required," [#646-1] at p. 33, ll. 2-4; (2) In response to a letter from Defendants' counsel requesting return of all records, Mr. Lapedus told counsel "that the only thing [he] had was [his] working papers, which belong to [him], which [he] needed to keep, and that Hutchens had all his original documentation, and [Lapedus]

had – [he] didn't have any bank statements, deposit books or any other documents of [Hutchens]," *id.* at p.37, ll. 2-6; (3) Mr. Lapedus "normally" returned clients' documents when he was finished with them because he had no place to store them, and he never retained any of the Hutchens Defendants' bank statements or documents but instead returned "everything that originated in their office." Mr. Lapedus retained his working papers, the tax returns that he filed and the financial statements on his computer, but none of the Hutchens' original documents, *id.* at pp. 206-207, ll. 12-15; (4) Mr. Lapedus had no reason to keep papers relating to the various mortgages he worked on and believes he destroyed most of those papers. [#647-1] at p. 22, ll. 13-20.

The evidence provided by the parties does not support a reasonable inference, much less a conclusion, that Mr. Lapedus stole or destroyed the Hutchens Defendants' accounting records. Defendants provide a single deposition statement by Mr. Lapedus which implies that he once had a significant volume of records: "I guess I could have photocopied my entire 15 feet of file and put it in." *Id.* at p. 126, ll. 5-6. But the deposition excerpt submitted does not include the original question to which this response was given, and does not include any further information from which the Court can discern what "my entire 15 feet of file" means, whether it relates to the Hutchens Defendants, or where Mr. Lapedus could have "put" it. This single mystery reference, standing alone, is simply insufficient to support the Hutchens' Defendants' contention that Mr. Lapedus admitted to theft or destruction of the Hutchens' Defendants' accounting records. At most, he admitted to destroying unneeded mortgage documents. In the absence of any evidence of theft, the Court rejects the Lapedus excuse for purposes of the Motion.

At some point Plaintiffs obtained certain financial information about the Hutchens

Defendants from the Royal Canadian Mounted Police, "who provided a copy of the documents they obtained from Lapedus, [b]ut even this information is sketchy." *Motion* [#564] at 15.   The record supports Plaintiffs' assertion that they have not received a complete set of the Hutchens Defendants' accounting records, including the Snap ledgers. Notably, the Hutchens Defendants do *not* assert that these documents are protected by the accountant-client privilege or are  unavailable for any other reason than Mr. Lapedus' alleged wrongful conduct.   Moreover, despite Mr. Hutchens' avowed lack of knowledge of the current whereabouts of the Snap ledgers, it is clear that he is in possession of them for purposes of Fed. R. Civ. P. 34(a)(1) if they were, in fact, in the possession of his former accountant, Mr. Lapedus.   *See, e.g.*, *Nyanjom v. Hawker Beechcraft, Inc.,* No. 12-1461-JAR-KGG, 2014 WL 2135997 at *2 (D. Kan. May 22, 2014);   *Wardrip v. Hart*, 949 F. Supp. 801, 805 (D. Kan. 1996).   Finally, the Hutchens' Defendants' contention that  Mr. Lapedus stole the accounting records is not clearly connected to the issue of whether Mr. Lapedus possesses or possessed the Snap ledgers, as the Hutchens Defendants' professed unfamiliarity with the Snap ledgers is inconsistent with the conclusion that those documents were purportedly stolen.   Assuming that the Court was inclined to give credence to the Lapedus excuse, Mr. Lapedus could hardly have "stolen" records from Defendants that he himself created on his own computer and that the Hutchens Defendants did and do not know existed.

However, whether the Snap ledgers exist or not is beyond the Court's ability to determine at this juncture.   It is clear that Mr. Lapedus possessed some of the Hutchens Defendants'  accounting records at some point, and it is equally clear that there is no reasonable basis for the Court to find that he "stole" those records. To the contrary, the

evidence supports the conclusion that Mr. Lapedus returned original documents to Mr. Hutchens.  Neither party has offered any satisfactory explanation for the lack of Snap ledgers.  The parties appear to tacitly agree that these records were created by Mr. Lapedus, but neither offers any evidence as to whether the records were generated and/or retained on Mr. Lapedus' computer system, whether copies were ever provided to Mr. Hutchens, or whether they can be recreated or resurrected.  It is also clear that the Hutchens Defendants maintain that they do not have the Snap ledgers and have "no idea what a Snap ledger is." [#644-1] at 1.

Regardless, because Mr. Hutchens "possesses" records in the possession of his former accountant for purposes of discovery, the Court will grant the Motion to Compel production of the Snap ledgers.  The burden is on the Hutchens Defendants to show that they have made reasonable efforts to obtain these records, but they have not done so. *Nyanjom,* 2014 WL 2135997, at *2.  Nothing in Mr. Lapedus' testimony appears to pertain to the Snap ledgers either by name or to the extent they were computerized records created and maintained by him.  Insofar as the Court can determine from the deposition excerpts provided by counsel, Mr. Lapedus testified about return of "original" documents to Mr. Hutchens, not computer records he created.  Thus, on this record the Court can only presume that the Snap ledgers remain in Mr. Lapedus' possession and therefore may be obtained by Mr. Hutchens.  Accordingly, the Motion to Compel production of the Snap Ledgers is **granted**.

### (c)    Financial Statements

The remaining category of documents sought by Plaintiffs is "financial statements,

including balance sheets and income and expense statements, prepared by or for [Sandy Hutchens, Tanya Hutchens and Jennifer Hutchens] and any of the Hutchens Entities during the Relevant Period." *Status Report* [#640] at 4.  In response, the Hutchens Defendants essentially assert that they have produced all responsive documents in their possession, custody or control.  They argue that Plaintiffs are not entitled to documents outside of the Class Period.  As indicated above, the Court finds this argument to be partially correct and partially incorrect, and holds that the Plaintiffs are entitled to documents dated between January 1, 2004 and April 7, 2014.  *See supra* p. 17*.*  The Hutchens Defendants further assert that Plaintiffs are not entitled to documents to support a potential post-judgment remedy (i.e., imposition of a constructive trust), and that discovery requests geared to obtaining those documents are "an impermissible RICO fishing expedition."  *Supplemental Response* [#644] at 2.  However, the Hutchens Defendants make no further attempt to identify the document requests that they believe are designed to "support a potential post-judgment remedy" or to provide legal authority disallowing that practice, and the Court is not inclined to make the argument for them.  *See Cordova v. Aragon,* 569 F.3d 1183, 1191 (10th Cir. 2009) ("It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made."); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998) ("[D]istrict courts . . . have a limited and neutral role in the adversarial process, and [ought to be] wary of becoming advocates who comb the record . . . and make a party's case for it."); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Thus, for purposes of thoroughness, the Court addresses each category of financial statements sought by Plaintiffs separately below.

### (i)      Sandy Hutchens, Tanya Hutchens, Jennifer Hutchens

Plaintiffs assert that they are entitled to production of the Hutchens family members' financial statements "from 2008 through the present." [#640] at 8.   Sandy and Tanya Hutchens respond that they "have produced all such documents that they possess through the end of the class period." [#644-1] at 1.   Jennifer Hutchens responds that she "does not maintain or possess any responsive documents."   *Id.*   Plaintiffs imply that they are also entitled to certain tax returns from these parties, but Sandy and Tanya Hutchens assert that "Plaintiffs did not request that either of them produce tax returns."   *Id.*

The Hutchens Defendants have not fully responded to this request, as they have only provided documents "through the end of the class period."   Accordingly, the Court **grants** the Motion to the extent that it seeks Sandy and Tanya Hutchens' financial statements dated through April 7, 2014.   The Court finds no basis for concluding that Defendant Jennifer Hutchens has not fully responded, and therefore **denies** the Motion as to her financial statements.   The Court concludes that Plaintiffs did not seek production of tax returns in the discovery requests to which they refer in their *Further Status Report* [#640], and therefore **denies** the motion to the extent that Plaintiffs seek to compel production of tax returns.

### (ii)      308 Elgin Street Inc. ("Elgin Street")

Plaintiffs seek Elgin Street's financial statements from 2008 through the present. [#640] at 8.   Defendants assert that Elgin Street "operated only in 2008-2009. Lapedus stole/destroyed all responsive records. [Elgin Street] no longer operates and has not had a bank account since 2012." [#644-1] at 1.   This response stops short of maintaining that

there *are no responsive documents,* instead declaring that Lapedus stole them.  Because the Court rejects the Lapedus excuse for purposes of the Motion, the request is **granted** as to Elgin Street financial statements from 2008 through April 7, 2014.

### (iii)   Canadian Funding Corporation ("CFC") and Canadian Funding Limited (aka 1681071 Ontario Inc.) ("CFL")

Plaintiffs seek CFC financial statements from 2008 through the present and CFL financial statements from 2011 through the present. [#640] at 8.  Defendants assert that CFC "operated 2009-10. Lapedus stole/destroyed responsive records for 2009.  Any/all responsive documents produced as part of the loan files.  CFC no longer operates and has not had a bank account since 2012." [#644-1] at 2.  Defendants assert that CFL "received all wires for CFC," and incorporate their response as to CFC.  *Id.*  This response not only contends that "all" responsive documents have been produced, but also that Mr. Lapedus stole the CFC financial statements for 2009.

Plaintiffs are silent about whether these documents are contained in the "44 bankers boxes" of loan files produced by the Hutchens Defendants.  Fed. R. Civ. P. 34(b)(2)(E)(1) requires a responding party to produce documents "as they are kept in the usual course of business" *or* organized and labeled "to correspond to the categories in the request."  The Hutchens Defendants appear to assert that the loan files were produced as they were kept in the ordinary course of business, and Plaintiffs do not argue otherwise.  Nor do the Plaintiffs contend that the CFC and CFL financial statements are *not* in the loan files; indeed, as discussed earlier, there is very little mention of what they found in the 44 bankers boxes of loan files produced by the Hutchens Defendants.

Plaintiffs have the burden of showing that the documents they seek are in the

possession, custody or control of the responding party and that they have not been provided.  *Andrews v. United States,* No. 09-cv-00249-PAB-KMT, 2009 WL 4693855, at *1 (D. Colo. Dec. 4, 2009).  They have not met their burden here.  Accordingly, the Motion is **denied** as to CFC Financial Statements for 2008, 2010, 2011, 2012, 2013 and 2014 and CFL financial statements for 2011 to 2014.  Because the Court rejects the Lapedus excuse for purposes of the Motion, the request is **granted** as to CFC Financial Statements from 2009.

> **(iv)   First Central Mortgage Funding Inc. ("FCMF") and First Central Holdings Inc. ("FCH")**

Plaintiffs seek FCMF and FCH financial statements from 2008 through the present. [#640] at 8.  Defendants assert that FCMF "operated 2009-10. Lapedus stole/destroyed all responsive records for 2009.  Any/all responsive records produced as part of loan files." [#644-1] at 2.  Defendants assert that FCH "received all wires for FCMF," and add the Lapedus excuse and that responsive documents were produced in the loan files.  *Id.*

This response asserts that all responsive records have been produced, other than those stolen by Mr. Lapedus.  Plaintiffs are silent about whether these documents are contained in the "44 bankers boxes" of loan files produced by the Hutchens Defendants. Fed. R. Civ. P. 34(b)(2)(E)(1) requires a responding party to produce documents "as they are kept in the usual course of business" *or* organized and labeled "to correspond to the categories in the request."  The Hutchens Defendants appear to assert that the loan files were produced as they were kept in the ordinary course of business, and Plaintiffs do not argue otherwise.  Nor do the Plaintiffs contend that the FCMF and FCH financial statements are *not* in the loan files; indeed, as discussed earlier, there is very little mention

of what they found in the 44 bankers boxes of loan files produced by the Hutchens Defendants.

Plaintiffs have the burden of showing that the documents they seek are in the possession, custody or control of the responding party and that they have not been provided. *Andrews,* 2009 WL 4693855, at *1. They have not met their burden here. Accordingly, the Motion is **denied** as to FCMF and FCH financial statements for 2008, 2010, 2011, 2012, 2013 and 2014. Because the Court rejects the Lapedus excuse for purposes of the Motion, the request is **granted** as to FCMF and FCH financial statements from 2009.

### (v)  Northern Capital Investments Ltd. ("Northern Capital")

Plaintiffs seek Northern Capital's financial statements from 2008 through the present. [#640] at 8. Defendants respond that Northern Capital "operated briefly in 2011. Any/all responsive documents produced as part of the loan files." [#644-1] at 2.

This response asserts that all responsive records have been produced. Plaintiffs are silent about whether these documents are contained in the "44 bankers boxes" of loan files produced by the Hutchens Defendants. Fed. R. Civ. P. 34(b)(2)(E)(1) requires a responding party to produce documents "as they are kept in the usual course of business" *or* organized and labeled "to correspond to the categories in the request." The Hutchens Defendants appear to assert that the loan files were produced as they were kept in the ordinary course of business, and Plaintiffs do not argue otherwise. Nor do the Plaintiffs contend that the Northern Capital financial statements are *not* in the loan files; indeed, as discussed earlier, there is very little mention of what they found in the 44 bankers boxes

of loan files.

Plaintiffs have the burden of showing that the documents they seek are in the possession, custody or control of the responding party and have not been provided. *Andrews,* 2009 WL 4693855, at *1. They have not met their burden here. Accordingly, the Motion is **denied** as to Northern Capital's financial statements.

> **(vi)   JBD Hutchens Family Holdings Inc. (aka 2129981 Ontario Inc.) and JBD Holdings ("JBD")**

Plaintiffs seek JBD financial statements from 2008 through the present. [#640] at 8, 10. Defendants assert that they are not required to produce documents beyond the class period. [#644-1] at 2; *Transcript of Hearing on Motion for Sanctions* [#650] at p. 33, ll.14-15. The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014. Accordingly, the Motion is **granted** as to JBD financial statements through that date.

> **(vii)   101 Services Road ("101 Services")**

Plaintiffs seek 101 Services financial statements from 2012 through the present. [#640] at 8. Defendants assert that 101 Services was "sold in 2008. No further activity other than deferral of capital gains." [#644-1] at 2. This response does not address whether responsive documents exist and, if so, whether they have been produced. The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014. Accordingly, the Motion is **granted** as to 101 Services financial statements through that date.

> **(viii)   110-114 Pine Street ("Pine Street")**

Plaintiffs seek Pine Street financial statements from 2013 through the present. [#640] at 9. Defendants assert that they are not required to produce documents beyond

the class period. [#644-1] at 2; *Transcript of Hearing on Motion for Sanctions* [#650] at p. 33, ll.14-15.  This response does not address whether responsive documents exist and, if so, whether they have been produced. The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to Pine Street financial statements through that date.

### (ix)    29 Lauren Street ("Lauren Street")

Plaintiffs seek Lauren Street financial statements from 2014 through the present. [#640] at 9.  Defendants assert that they are not required to produce documents beyond the class period. [#644-1] at 2; *Transcript of Hearing on Motion for Sanctions* [#650] at p. 33, ll.14-15.  This response does not address whether responsive documents exist and, if so, whether they have been produced. The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to Lauren Street financial statements through that date.

### (x)    146 Whitaker Street Inc. ("Whitaker Street")

Plaintiffs seek Whitaker Street financial statements from 2012 through the present. [#640] at 8.  Defendants assert that Whitaker Street was "sold in 2008.  No further activity other than deferral of capital gains." [#644-1] at 3.  This response does not address whether responsive documents exist and, if so, whether they have been produced. The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014. Accordingly, the Motion is **granted** as to Whitaker Street financial statements through that date.

### (xi)    15-16 Keziah Court ("Keziah Court")

Plaintiffs seek Keziah Court financial statements from 2013 through the present. [#640] at 9. Defendants assert that they are not required to produce documents beyond the class period. [#644-1] at 2; *Transcript of Hearing on Motion for Sanctions* [#650] at p. 33, ll.14-15. This response does not address whether responsive documents exist and, if so, whether they have been produced. The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014. Accordingly, the Motion is **granted** as to Keziah Court financial statements through that date.

### (xii)   99 Douglas Street ("Douglas Street")

Plaintiffs seek Douglas Street financial statements from 2008 through the present. [#640] at 9. Defendants assert that Whitaker Street was "sold in 2008. No further activity." [#644-1] at 3. This response does not address whether responsive documents exist and, if so, whether they have been produced. The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014. Accordingly, the Motion is **granted** as to Douglas Street financial statements through that date.

### (xiii)   17 Serpentine Street ("Serpentine Street")

Plaintiffs seek Serpentine Street financial statements from 2012 through the present. [#640] at 9. Defendants assert that they are not required to produce documents beyond the class period. [#644-1] at 2; *Transcript of Hearing on Motion for Sanctions* [#650] at p. 33, ll.14-15. This response does not address whether responsive documents exist and, if so, whether they have been produced. The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014. Accordingly, the Motion is **granted** as to Serpentine Street financial statements through that date.

### (xiv)   367-369 Howey Drive and 247 Shaughnesy Street Inc. and 720 Cambrian Heights Inc. ("Howey/Cambrian")

Plaintiffs seek Howey/Cambrian financial statements from 2008 to the present. [#640] at 9-10.   Defendants assert that "in pre-class proceedings in Canada, the Hutchens Defendants reached, by consent, an agreement with plaintiffs' then Canadian attorney, Bennet Jones, that [these properties are] excluded from any injunctive relief or further legal action, including production of any documents or data.   This agreement reflected the fact that the Hutchens Defendants cannot release financial details regarding [these properties] without the consent of their 40% partners, who do not consent to releasing any financial records or data." [#644-1] at 3-4.   Defendants offer no evidence of this agreement other than counsel's unsworn statement, which is insufficient.   *See, e.g.*, *Turton v. Kempthorne*, No. 06-cv-00451-WYD-CBS, 2007 WL 2788618, at *4 (D. Colo. Sept. 21, 2007) (holding that summary judgment was improper because party offered more evidence of disputed fact besides an unsworn statement of her attorney); *Zimmerman v. Comm'r of Internal Revenue*, 29 F. App'x 19, 2002 WL 31745063, at *1 (10th Cir. 2002) (holding unsworn letter from taxpayer's attorney was insufficient as a matter of law to establish timely filing of notice of appeal). The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.   Accordingly, the Motion is **granted** as to Howey/Cambrian financial statements through that date.

### (xv)   193 Mountain Street ("Mountain Street")

Plaintiffs seek Mountain Street financial statements from 2013 through the present. [#640] at 9.   Defendants assert that they are not required to produce documents beyond the class period. [#644-1] at 2; *Transcript of Hearing on Motion for Sanctions* [#650] at p.

33, ll.14-15.  This response does not address whether responsive documents exist and, if so, whether they have been produced.  The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to Mountain Street financial statements through that date.

### (xvi)   364 Morris Street ("Morris Street")

Plaintiffs seek Morris Street financial statements from 2013 to the present. [#640] at 9-10.  Defendants assert that Morris Street was "sold at a loss, June/July 2015."  They also incorporate their response re Howey/Cambrian, to the effect that "in pre-class proceedings in Canada, the Hutchens Defendants reached, by consent, an agreement with plaintiffs' then Canadian attorney, Bennet Jones, that [these properties are] excluded from any injunctive relief or further legal action, including production of any documents or data. This agreement reflected the fact that the Hutchens Defendants cannot release financial details regarding [these properties] without the consent of their 40% partners, who do not consent to releasing any financial records or data." [#644-1] at 3-4.  Defendants offer no evidence of this agreement other than counsel's unsworn statement, which is insufficient. *See, e.g.*, *Turton*, 2007 WL 2788618, at *4) (holding that summary judgment was improper because party offered more evidence of disputed fact besides an unsworn statement of her attorney); *Zimmerman*, 2002 WL 31745063, at *1 (10th Cir. 2002) (holding unsworn letter from taxpayer's attorney was insufficient as a matter of law to establish timely filing of notice of appeal).  The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to Morris Street financial statements through that date.

### (xvii)  332 Regent Street Inc. ("Regent Street")

Plaintiffs seek Regent Street financial statements from 2012 through the present. [#640] at 9.  Defendants assert that they are not required to produce documents beyond the class period. [#644-1] at 4; *Transcript of Hearing on Motion for Sanctions* [#650] at p. 33, ll.14-15.  This response does not address whether responsive documents exist and, if so, whether they have been produced.  The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to Regent Street financial statements through that date.

### (xviii) 625 Ash Street Inc.  ("Ash Street")

Plaintiffs seek Ash Street financial statements from 2013 through the present. [#640] at 9.  Defendants assert that they are not required to produce documents beyond the class period. [#644-1] at 4; *Transcript of Hearing on Motion for Sanctions* [#650] at p. 33, ll.14-15. This response does not address whether responsive documents exist and, if so, whether they have been produced.   The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to Ash Street financial statements through that date.

### (xix)  789 Lawson Street Inc. ("Lawson Street")

Plaintiffs seek Lawson Street financial statements from 2012 through the present. [#640] at 9.  Defendants assert that the property "sold in 2014." [#644-1] at 4.  This response does not address whether responsive documents exist and, if so, whether they have been produced. The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to Lawson Street financial

statements through that date.

### (xx)   3415 and 3419 Errington Avenue Inc. ("Errington Avenue")

Plaintiffs seek Errington Avenue financial statements from 2014 through the present. [#640] at 9-10.  Defendants assert that they are not required to produce documents beyond the class period. [#644-1] at 4; *Transcript of Hearing on Motion for Sanctions* [#650] at p. 33, ll.14-15.  This response does not address whether responsive documents exist and, if so, whether they have been produced.  The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to Errington Avenue financial statements through that date.

### (xxi)   2800 North Flagler Drive Units 106-107 ("North Flagler Drive")

Plaintiffs seek North Flagler Drive financial statements from 2008 through the present. [#640] at 10.  Defendants assert that this was a "single purpose entity for closed Florida loan.   Related file previously produced. . . . A potentially and inadvertently unproduced statement regarding the disbursement of the loan payoff proceeds is attached." They attach a letter dated November 19, 2010 regarding receipt of wired funds from Thomas Mahoney. [#644-1] at 6-7.  They provide no explanation relating to North Flagler Drive's financial statements.   The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to North Flagler Drive's financial statements through that date.

### (xxii)  Santan Property Management Inc. ("Santan")

Plaintiffs seek Santan financial statements from 2008 through the present. [#640] at 10.  Defendants assert that "all responsive documents provided.  Only activity occurred

in 2010." [#644-1] at 5.  The Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to Santan financial statements through that date.

### (xxiii) The Estate of Judith Hutchens ("J. Hutchens Estate")

Plaintiffs seek J. Hutchens Estate financial statements from 2008 through the present. [#640] at 10.  Defendants assert that "Lapedus destroyed/stole all responsive records.  No post-Lapedus activities." [#644-1] at 5.  The Court has rejected the Lapedus excuse, as explained above.  In addition, the Court has concluded that Plaintiffs are entitled to documents through April 7, 2014.  Accordingly, the Motion is **granted** as to J. Hutchens Estate financial statements through that date.

### C.    Legal Standard for Imposing Discovery Sanctions

Fed. R. Civ. P. 37 contemplates a variety of discovery abuses and describes remedies for each.  For example, if a motion to compel is granted in part and denied in part, the court "may . . . apportion the reasonable expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).  If a party fails to provide information or to supplement an earlier response, the party "is not allowed to use that information or witness . . . unless the failure was substantially justified."  In the alternative or in addition, the Court may order payment of "the reasonable expenses, including attorneys' fees, caused by the failure," "may inform the jury of the party's failure," or "may impose any other appropriate sanctions."  Fed. R. Civ. P. 37(c)(1)(A-C).

In cases involving extreme discovery abuses and usually other egregious misconduct, the Court may enter default judgment as a sanction.  *See, e.g., Klein v.*

*Harper*, 777 F.3d 1144 (10th Cir. 2015) (imposing default judgment against pro se defendant who failed to appear at scheduling conference, filed frivolous pleadings after being warned and sanctioned, failed to pay sanctions, and completely failed to respond to opposing party's discovery requests); *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869 (10th Cir. 1987) (imposing default judgment against parties who failed to respond to discovery requests and failed to attend depositions after court warned them that failure to attend would result in entry of default); *Chicago Ins. Co. v. Hamilton*, No. 09-cv-01815-LTB-MJW, 2010 WL 2541133 (D. Colo. May 26, 2010) (imposing default judgment on pro se defendant who failed to properly respond to complaint, repeatedly and willfully disregarded court orders, failed to timely respond to interrogatories and requests for production and failed to respond at all to requests for admissions); *Peregrine Commc'ns, Inc. v. Securenet, LLC*, No.08-cv-02277-CBS-KLM, 2009 WL 902411 (D. Colo. Apr. 1, 2009) (imposing default judgment against party who failed to appear at two hearings, failed to comply with the Court's orders, failed to comply with the Federal Rules of Civil Procedure and Local Rules, failed to respond to an Order to Show Cause and failed to appear through counsel).

"Default judgment is generally considered a harsh sanction that should be used only when a party's non-compliance is due to 'willfulness, bad faith, or any fault of the [disobedient party]' and not when a party is unable to comply with a discovery order." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013). In determining whether entry of judgment by default is a just sanction, courts have considered such factors as: (1) the degree of actual prejudice to the requesting party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant. *Id.*

**D.    Propriety of Sanctions**

Plaintiffs complain that the Hutchens Defendants' initial Rule 26 disclosures were inadequate and that they did not supplement or update them for more than three years. *Motion* [#564] at 7. They complain that the Hutchens Defendants failed to fully respond to their July 2012 discovery requests and ignored the Court's Order granting their previous Motion to Compel. *Id.* at 10-23.  They seek a variety of sanctions, including:

- "the entry of default against the Hutchens Defendants as to any of their affirmative defenses to plaintiffs' civil RICO claims;"
- "imposition of a constructive trust;"
- "an order prohibiting the Hutchens Defendants from seeking to offer evidence that during the Class Period, either by themselves or from third parties, they had the capacity, ability, and/or the intent to fund any of the loans committed to Plaintiffs and Class Members;"
- "an Order precluding the use of any evidence by the Hutchens Defendants as to the following issues: (a) whether [they] had any track records of closing loans; (b) whether [they] had the capacity to fund loans of the nature and size of the loan commitments issued to Plaintiffs and Class members; and (c) whether [they] had any sources to fund loans of the nature and size of the loan commitments issued to Plaintiffs and Class members;" and
- an award of the reasonable attorneys' fees and expenses incurred in bringing the Motion and the Motion to Compel.

*Id.*  at 31-32.

The Hutchens Defendants contend that they supplemented their previous discovery responses five times before the filing of the Motion, produced supplemental documents in conjunction with class certification proceedings, provided Fourth Supplemental Rule 26 Disclosures, filed additional documents which should be counted as supplemental disclosures, and that Plaintiffs misconstrue the Court's previous order compelling discovery, which did not address documents about lending history or funding, but merely addressed attorney-client privilege.  *Response* [#574] at 3-7.  At the time of filing of their Response, they asserted that they would provide a "comprehensive supplement" to their previous responses, but that doing so was challenging because of Lapedus' theft and destruction

of records.  *Id.* at 8.  The Hutchens Defendants contend that although they were overly optimistic about the time frame in which they could draft the "comprehensive supplement," they nevertheless worked diligently to do so.  *Id.* at 8-9.

As indicated above, it is virtually impossible for this Court to fully trace the actions and reactions of the parties pertaining to discovery over the three and one-half years since Plaintiffs filed their original Motion to Compel and Defendants produced 44 bankers' boxes of documents and a variety of additional information.  Based on my thorough review of the Relevant Pleadings and the case docket, at the end of the day, I find as follows:

1.  In their original 52-page Motion to Compel which eventually led to the filing of the Motion at issue here, Plaintiffs sought a variety of information from Defendants Sandy Hutchens, Tanya Hutchens, Jennifer Hutchens and the Hutchens Entities.  In terms of documents alone, they sought communications with attorneys, loan brokers and funding sources, bank statements, cancelled checks, accounting records, due diligence records, and financial statements [#255] at 26-28.  The Hutchens Defendants' interpretation of the District Judge's Order granting Plaintiffs' original Motion to Compel Discovery by Hutchens is disingenuous, at best.  The Order reads as follows:

> The Court issues the same orders as it has with respect to the other defendants. The objections to discovery are denied, except to the extent that there might be legitimate protections to specific interrogatories, requests for admission, and requests for production of documents on the basis of attorney-client privilege or work product. To some extent the Court cannot make judgments on the legitimacy or application of privileges without seeing the documents.  Accordingly, to the extent information has been withheld on those grounds, the Hutchens Defendants are ordered to bring answers to the questions and to bring the withheld documents to the March 7, 2013 status conference, unless it is <u>impossible</u> to do so on short notice.

> That exception does not apply to the loan files, which are discussed under a different motion.  They are to be produced forthwith.  It does not apply to

information or documents concerning the September 14, 2008 meeting in Mr. Meisels' office, unless the Hutchens Defendants can provide a valid response to the waiver argument based on the alleged presence at the meeting of loan broker Bryce Coates.

If the amount of material that is withheld by the Hutchens Defendants on claims of privilege or work product is voluminous, the Court will consider the possibility of engaging a special master, at the parties' initial expense (the ultimate burden to be determined as part of any award of costs). The possible application of the crime-fraud exception would be considered during an *in camera* review by either the Court or a special master.

[#406] at 32-33 (emphasis in original). Nothing in this Order suggests, as the Hutchens Defendants contend, that the Order does not address documents regarding lending history or funding. The Order explicitly required the Hutchens Defendants to turn over <u>all</u> documents requested by Plaintiffs except those subject to a privilege, including the loan files. Nevertheless, the Hutchens Defendants failed to turn over the Posner accounting records until January 7, 2016. *Response* [#622] at 1.

2. The Hutchens Defendants' failure to immediately produce records of Mr. Posner in response to the Court's March, 2013 Order lacked substantial justification, promoted delay and obfuscated the search for truth.

3. The Hutchens Defendants' repeated reliance on the Lapedus excuse lacked substantial justification, promoted delay and obfuscated the search for truth.

4. As of this date, aside from the documents which the Court explicitly orders Defendant Sandy Hutchens to produce here, there is no basis for the Court to conclude that he has otherwise failed to substantially comply with the written discovery requests at issue.

5. Plaintiffs have failed to sustain their burden of showing that entry of a default judgment is warranted here. Most importantly, they have not demonstrated the degree of

actual prejudice from the delay and obfuscation caused by the Hutchens Defendants' bad conduct.  *Klein-Becker USA*, 711 F.3d at 1159.

6.   Under Fed. R. Civ. P. 37(a)(5)(C), Plaintiffs are entitled to recovery of their reasonable costs and attorneys' fees relating to the Motion *insofar as the Motion is granted in part*.

7.   As a sanction for not obeying the Court's March, 2013 discovery Order and pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii), the Hutchens Defendants are precluded from using any of the Lapedus and Posner accounting records and any of the records ordered produced here to support their defenses in this action.

## IV.  Conclusion

For the reasons set forth above, the Motion [#564] is **granted in part and denied in part.**   The Hutchens Defendants' Joinder in and Response to Plaintiffs' Motion for a Ruling on their Sanctions Motion and Motion to Compel [#610] is **granted**.  IT IS HEREBY **ORDERED** as follows:

A.   **On or before April 11, 2016,** Defendant Sandy Hutchens shall produce the following documents to Plaintiffs, *if they exist*:

(1)   Snap ledgers and all other documents reflecting use of the "Snap" accounting system;
(2)   Sandy Hutchens' financial statements through April 7, 2014;
(3)   Tanya Hutchens' financial statements through April 7, 2014;
(4)   308 Elgin Street Inc. financial statements through April 7, 2014;
(5)   Canadian Funding Corp. financial statements from 2009;
(6)   First Central Mortgage Funding Inc. financial statements from 2009;
(7)   First Central Holdings Inc. financial statements from 2009;
(8)   JBD Hutchens Family Holdings Inc. and JBD Holdings Inc. financial statements through April 7, 2014;
(9)   101 Services Road financial statements through April 7, 2014;
(10)   110-114 Pine St. financial statements through April 7, 2014;

(11)   29 Lauren St. financial statements through April 7, 2014;
(12)   146 Whitaker St. financial statements through April 7, 2014;
(13)   15-16 Keziah Ct. financial statements through April 7, 2014;
(14)   98 Douglas St. financial statements through April 7, 2014;
(15)   17 Serpentine St. financial statements through April 7, 2014;
(16)   367-369 Howey Dr. and 247 Shaughnesy St. Inc. and 720 Cambrian Heights Inc. financial statements through April 7, 2014;
(17)   193 Mountain St. financial statements through April 7, 2014;
(18)   364 Morris St. financial statements through April 7, 2014;
(19)   337 Regent St. financial statements through April 7, 2014;
(20)   625 Ash St. financial statements through April 7, 2014;
(21)   789 Lawson St. financial statements through April 7, 2014;
(22)   3415 and 3419 Errington Ave. financial statements through April 7, 2014;
(23)   2800 N. Flagler Dr. Units 106-107 financial statements through April 7, 2014;
(24)   Santan Property Management Inc. financial statements through April 7, 2014; and
(25)   Estate of Judith Hutchens financial statements through April 7, 2014.

B.  **On or before April 11, 2016,** for any documents listed in paragraph A above which Defendant Sandy Hutchens does <u>not</u> produce, he shall provide the following information: (1) an explanation of why each document is not produced; (2) a statement of whether each document currently exists; (3) a statement of whether each document existed at some time in the past and, if so, when; (4) for each document which currently exists or existed at some time in the past, a description of the purpose and content of each document; and (5) for each document that existed in the past, an explanation of: (a) where copies of the document were stored (both physically and electronically); (b) who created each document; (c) when was the last time Defendants Sandy or Tanya Hutchens saw each document; and (d) whether each document can be recreated to a reasonable degree of accuracy and if not, why not.  This information shall be provided in writing, under oath, signed by Defendant Sandy Hutchens.

C.  **On or before April 11, 2016,** Plaintiffs shall submit documentation not exceeding

50 pages of their reasonable costs and attorneys' fees incurred <u>since September 28, 2015</u> in making the Motion, in accordance with D.C.COLO.LCivR 54.3.  Relevant time entries shall be extracted from applicable time records and compiled into a single document for purposes of this filing. **Failure to comply with D.C.COLO.LCivR 54.3 shall result in denial of the request for costs and attorneys' fees**.  **On or before April 21, 2016**, the Hutchens Defendants shall file any response to Plaintiffs' documentation, not exceeding 15 pages.  **On or before April 27, 2016**, Plaintiffs shall file any reply in support of their documentation, not exceeding 7 pages.

D.  As a sanction for discovery abuse pursuant to Fed. R. Civ. P. 37(c)(1)(C) and (b)(2)(A)(ii), the Hutchens Defendants are precluded from using any of the Lapedus and Posner accounting records and the records referenced in paragraph A above to support their defenses in this action.

Dated:  March 30, 2016

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge