IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-01012-RBJ-KLM

CGC HOLDING COMPANY, LLC, a Colorado limited liability company;
CRESCENT SOUND YACHT CLUB, LLC, a Florida limited liability company;
HARLEM ALGONQUIN LLC, an Illinois limited liability company; and
JAMES T. MEDICK; on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

SANDY HUTCHENS, a/k/a Fred Hayes, a/k/a Moishe Alexander,
a/k/a Moshe Ben Avraham, et al,

    Defendants.

---

## ORDER on PENDING MOTIONS – No. 5

---

Presently pending are (1) plaintiffs' motion in limine seeking an order precluding the "Hutchens Defendants" from presenting live testimony at trial if the witnesses won't appear for examination during plaintiffs' case in chief; (2) the Hutchens Defendants' motion to alter or amend the Court's summary judgment order issued April 29, 2016 in certain respects; and (3) plaintiffs' motion to compel the Hutchens Defendants to produce certain discovery information.[1] This order addresses the first two motions. The third has been referred to Magistrate Judge Mix.

**I.**       **Facts.**

I have summarized the basic claims and defenses several times in previous orders and will repeat only so much as might be helpful to give the pending motions some context.

---

[1] The Court refers to defendants Sandy Hutchens, his wife Tanya Hutchens, his daughter Jennifer (Hutchens) Araujo, and several entities closely associated with Mr. Hutchens collectively as "the Hutchens Defendants."

1

Plaintiffs represent a class of entities and individuals in the United States who, desperate for loans, learned of lenders headquartered in Toronto, Ontario who had money to lend. They submitted applications through loan brokers, received loan commitment agreements, and paid nonrefundable loan commitment fees that were required by the lenders. Thereafter, in each case the lenders determined that the would-be borrower failed to meet some eligibility condition, terminated the loan commitment, and retained the commitment fee.

Plaintiffs claim that from the outset the purported lenders had neither the intent nor the ability to fund more than a tiny fraction, if any, of the loans to which they committed. Instead, Plaintiffs claim that this was a fraudulent scheme designed to swindle them out of the loan commitment fees. The purported mastermind was Sandy Hutchens, although they did not know that at the time because he and his associates concealed his identity and his criminal past by the use of a number of aliases.

Although it was not clear when the case was first filed, plaintiffs have since stipulated that there were legitimate reasons for which a bona fide lender could have declined the loans. However, plaintiffs claim that they never would have applied for the loans and paid the up-front commitment fees had they known of the facts that Mr. Hutchens and his associates concealed from them. Plaintiff initially asserted a variety of causes of action, but what remains for trial are claims under the Racketeer Influenced and Corrupt Practices Act, sometimes referred to as civil RICO.

The Hutchens Defendants argue that Sandy Hutchens was a reformed man and a legitimate lender. They submit that he and his associated entities had both the ability and the intent to fund loans to qualified borrowers. However, after receiving the commitment fees, the Hutchens Defendants discovered during the course of their due diligence investigation that

applicants either were not qualified or had omitted material facts from their applications, or both. For those reasons the loans were not funded, and plaintiffs have no grounds to claim entitlement to return of their application fees.

## II. Case History.

This case was filed on April 15, 2011. Plaintiffs named as defendants the lenders and several lawyers and a real estate agent who allegedly assisted Mr. Hutchens in the perpetration of the fraud. During the course of the case many motions have been filed, many orders have been issued, one interlocutory appeal has been taken, and the case has been set and re-set for trial several times. Along the way plaintiffs' claims against all defendants other than the Hutchens Defendants have either settled or have been dismissed. The trial of plaintiffs' RICO claims against the Hutchens Defendants is set for April 10, 2017.

## III. Pending Motions.

### A. Plaintiffs' Motion in Limine to Preclude Any of the Hutchens Defendants from Testifying Live in Defendants' Case-in-Chief if the Hutchens Defendants Refuse to Make Them Available During Plaintiffs' Case-in -Chief [ECF No. 694]: GRANTED.

Plaintiffs have apparently taken depositions of Sandy and Tanya Hutchens and Jennifer Araujo, but they prefer to call them as live witnesses at trial. However, the Hutchens Defendants have declined to commit to their presence. Therefore, plaintiffs seek an order precluding the defendants from calling these individuals as live witnesses during the defense case if they did not make themselves available to be called live by the plaintiffs.

The Hutchens Defendants respond that the motion is premature and speculative. It is unlikely, they suggest, that one of these individuals would be unavailable to testify during plaintiffs' case but available during defendants' case. ECF No. 709 at 1. But if that "speculative improbability" were to occur, the Court could keep plaintiffs' case in chief open until the witness

3

is called by the defense and then permit plaintiffs' counsel to cross-examine the witness fully at that time. *Id.* at 1-2. Or, if the witnesses are present during plaintiffs' case in chief, the Court could "mitigate the potential unfairness to a defendant of having its witness presented in the plaintiffs' case-in-chief by permitting the witness to be presented as an out-of-order defense witness." *Id.* at 2.

It appears from defendants' proposed alternatives that they do anticipate that the individuals will be present at least at some point during the trial. Therefore, the dispute is a tactical one, apparently turning on which party gets to present the live testimony first. But it is neither unusual nor improper for a plaintiff to wish to call the opposing party during the plaintiff's case in chief. Absent some irreconcilable scheduling conflict, there generally is no compelling reason to let a defendant call witnesses in the middle of a plaintiff's case or to leave a plaintiff's case open until after the defendant has called the witnesses.

Here, it does not appear that either side disagrees with the basic proposition that, as between live or deposition testimony, live testimony is preferable. *See, e.g., Salsman v. Witt,* 466 F.2d 76, 79 (10th Cir. 1972). Of course depositions have a variety of uses per Rule 32, but defendants' refusal to commit to the presence of the three Hutchens, each of whom is a defendant in the case, during plaintiffs' case in chief while reserving the option to call them as live witnesses during defendants' case in chief strikes me as unjustified "gamesmanship." *See R.B. Matthews, Inc. v. Transamerica Transportation Services, Inc.,* 945 F.2d 269, 272-73 (9th Cir. 1991).

This not to say that these defendants must necessarily appear at all. Rather, it is to say that defendants can't have it both ways. If these individuals will appear live, then they must appear live during plaintiffs' case in chief so that they can be called by the plaintiffs if they so

4

desire. I thus agree with Judge Sammartino of the Southern District of California when she held, "[i]f Plaintiffs are forced to show the videotaped depositions or read the transcript into the record of any of the movants in this action because Defendants have failed to produce them, Defendants will thereafter be precluded from producing the same witnesses in person." *Iorio v. Allianz Life Ins. Co. of North America*, No. 05cv633 JLS (CAB), 2009 WL 3415689, at *18 (D. D. Cal. Oct. 21, 2009). *See also Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 806 (N.D. Ill. 2002) (invoking district court's authority under Fed. R. Evid. 611(a) to exercise reasonable control over the mode and order of examining witnesses to preclude live testimony of a witness during the defense case after the witness refused to appear during plaintiffs' case and forced plaintiff to read his deposition into the record). *Accord, Maran Coal Corp. v. Societe Generale De Surveillance S.A.*, No. 92 CIV 8728 (DLC), 1996 WL 11230, at *2 (S.D. N.Y. Jan. 10, 1996).

Accordingly, this motion is granted.

**B. Hutchens Defendants' Motion to Alter or Amend the Court's Summary Judgment Order on Unclean Hands and Proximate Cause [ECF No. 710]: GRANTED IN PART AND DENIED IN PART.**

Earlier in the case the Hutchens Defendants filed separate summary judgment motions asking the Court to dismiss plaintiffs' civil RICO claim based on theories of "unclean hands," ECF No. 627, and lack of proximate causation. ECF Nos. 627. The Court denied the motions in an order issued on April 29, 2016. ECF No. 693. The Hutchens Defendants now ask the Court to reconsider two parts of its order which, they suggest, are so manifestly wrong as a matter of law as to present "a nearly certain risk of reversal on appeal." ECF No. 710.

In response plaintiffs recognize that a motion to reconsider can be granted if, among other reasons, there is "a need to correct clear error or prevent manifest injustice." ECF No. 712 at 1 (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). However, unhelpfully, plaintiffs do not address defendants' arguments on their merits but simply assert that

the motion rehashes arguments already raised and decided. If there is reversible error in the Court's ruling plaintiffs more than anyone should want it corrected.

One must bear in mind, however, that what the Court did was decline to grant summary judgment. The Court has no intention of excluding either side's evidence supporting or opposing their respective theories so long as the evidence is otherwise admissible. I turn now to the specific claims of error in the pending motion.

1. Unclean Hands.

With respect to "unclean hands" as an affirmative defense, one must consider what such an affirmative defense would mean. "An affirmative defense is a defense which admits the essential facts of a complaint and sets up other facts in justification or avoidance." *Losada v. Norwegian (Bahamas) Ltd.,* 296 F.R.D. 688, 689 (S.D. Fla. 2013) (internal quotation marks omitted). *See* Fed. R. Civ. P. 8(c). *See also Hwang v. Kansas State University,* 753 F.3d 1159, 1163 (10th Cir. 2014) (affirmative defense and remedial measures are issues that arise only after the plaintiff establishes liability). In effect the Hutchens Defendant are saying is, "even if we fraudulently induced these applicants into playing loan commitment fees by concealing critical facts, the plaintiffs' claim should not be allowed if they have unclean hands."

In that context I review again the Hutchens Defendants' summary judgment argument. With respect to the "unclean hands" affirmative defense, they identified five applicants who allegedly misrepresented or omitted certain facts. Class representative Medick did not disclose that his wife owned his home, and that their home loans were in arrears. Class representative Crescent Sound did not disclose a second mortgage or that its partner, Michael Buono, was in a

foreclosure proceeding. Class members Mound Road Realty Ventures, Levanis and Wildwood Industries did not disclose judgments, liens, or foreclosure proceedings. ECF No. 628 at ¶¶8-9.[2]

In my order I reviewed the then available case law discussing whether "unclean hands" can be an affirmative defense to a civil RICO claim. I noted that cases at the circuit level were mixed. *Compare Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1366 n.41 (11th Cir. 2002) *and Laborers' International Union of North America v. Caruso,* 197 F.3d 1195, 1197-98 (7th Cir. 1999) (suggesting that unclean hands could be applied) *with Roma Construction Co. v. aRusso,* 96 F. 3d 566, 571-75 (1st Cir. 1966) (suggesting otherwise). I also cited district court cases holding that unclean hands cannot bar a RICO suit and one district case that concluded otherwise. *See Smithfield Foods, Inc. v. United Food and Commercial Workers International Union,* 593 F. Supp. 2d 840, 847 (E.D. Va. 2008) (stating that an overwhelming majority of the district courts had concluded that the defense of unclean hands is not available in a civil RICO action and citing four other cases). *But see Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corporation,* 238 F.R.D. 679, 694 (S.D. Fla. 2006) (interpreting the Eleventh Circuit's footnote in *Sikes* as indicating that the court was receptive to the argument that unclean hands is a viable defense in a RICO case). The pending motion does not provide any additional authority on that subject.

Nevertheless, I allowed as how there might be circumstances where unclean hands could be a viable affirmative defense against a civil RICO claim, citing the facts of the *Sikes* case as an example. Based on the facts asserted by the Hutchens Defendants in their motion, however, I was not persuaded that this is such a case. To put it bluntly, if the facts concerning the Hutchens

---

[2] The Hutchens Defendants also stated that the lenders received 70-80 applications from a loan broker named Leon Franklin, who in turn received many of them from another broker, Jill Evans, who in turn was later indicted for mortgage fraud. That falls short of direct or even circumstantial evidence that the loan applications submitted by Mr. Franklin contained material misrepresentations or omissions of fact.

7

Defendants are as the plaintiffs allege them to be, I would find it to be inequitable, indeed an undeserved windfall, to permit defendants' success at identifying the described omissions in five applications to be sufficient to negate liability for a massive fraud.

The Hutchens Defendants now cite and rely on *Precision Instrument Mfg. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806 (U.S.) for its holding that the equitable maxim of unclean hands "is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Id.* at 814. However, it's not the doctrine but rather its application to the facts of this case that is in question. *Precision Instrument* emphasized the "wide range to the equity court's use of discretion in refusing to aid the unclean litigant." *Id.* at 815. It did not involve an allegedly massive fraud that logically cut off the chain of causation between the plaintiffs' alleged wrongs and the plaintiffs' claimed damages, as I discuss below.

I will not speculate on what evidence might be adduced at trial, and I will not close my mind to the possibility that the evidence might support intentional misrepresentation by a particular applicant that rises to the point that an unclean hands defense can be asserted as against that applicant. To that limited extend the motion is granted. Suffice it to say, however, that at this point I have not yet been convinced to permit the defense.

2. <u>Proximate Cause</u>.

The second claim of error is based on the following sentence in this Court's order denying summary judgment on the proximate cause issue: "The fact that class members ultimately did not qualify for loans is beside the point." ECF No. 693 at 7. The Hutchens

Defendants argue that the sentence is contrary to the Tenth Circuit's decision on the class certification issue in this case. They point to the following footnote:

> Many of the defendants, for example, point out plaintiffs' concession that there may have been legitimate reasons for lenders to deny each class members' loan application. According to defendants, this destroys proximate cause. On the merits, this might be true, and the parties can certainly litigate this issue at trial. As a threshold matter, however, these arguments of proximate causation do not divest plaintiffs of standing to bring their well-pleaded RICO claims.

*CGC Holding Co., LLC v. Broad and Cassel,* 773 F.3d 1076, 1088 n.15 (10th Cir. 2014).

I do not find the subject sentence from this Court's summary judgment order or the paragraph in which it is found to be inconsistent with the Tenth Circuit's footnote. [3] Plaintiffs' admission that there were legitimate reasons for which a bona fide lender could have declined the loans is clearly relevant to defendants' theory of the case, and it certainly can and presumably will be litigated at trial.

But the jury might reject the defendants' theory and resolve the facts in favor of the plaintiffs. Thus, the jury could find that plaintiffs would not have entered into a loan commitment agreement and paid up-front, nonrefundable commitment fees if they had known about Sandy Hutchens' involvement and his criminal history. Likewise, the jury could find that the Hutchens Defendants did not have the intention or the ability to fund loans regardless of

---

[3] The complete paragraph reads,

> In short, the causation issue – whether the alleged misrepresentations and omissions concerning Sandy Hutchens and the Hutchens Defendants' ability and willingness to fund loans caused class members to tender and lose loan application fees – is an issue for proof (on a classwide basis) at trial. *The fact that class members ultimately did not qualify for loans is beside the point.* As I have said, prospective borrowers "with questionable qualifications arguably might have been perfect targets for the type of loan fraud alleged here." ECF No. 428 at 4. Plaintiffs claim that the class members would not have applied and paid application fees had the misrepresentations and omissions not occurred.

*Id.* (emphasis added).

plaintiffs' qualifications, and had plaintiffs known that before they applied for loans and paid the commitment fees, they would not have done so.

The Tenth Circuit held that plaintiffs are required to show both that the RICO violation was a "but for" cause of their injuries and that it was "the proximate cause" of the injuries as well. *CGC Holding Co.,* 773 F.3d at 1088. It explained that the central question with respect to proximate causation is "'whether the alleged violation led directly to the plaintiffs' injuries.'" *Id.* Further, in fraud cases such as this case, "'proving reliance is necessary [because] it is integral to Plaintiffs' theory of causation.'" *Id.* at 1089.

If plaintiffs had not applied for loans, they obviously would not have sustained the loss of their loan commitment fees. Put another way, if the fraudulent scheme is what induced them to apply for loans and pay the commitment fees, then the alleged violation led directly to the their claimed injuries. And, "the fact that a class member paid the nonrefundable up-front fee in exchange for the loan commitment constitutes circumstantial proof of reliance on the misrepresentations and omissions regarding Hutchens's past and the defendant entities' ability or intent to actually fund the promised loan." *Id.* at 1092.

If there is something wrong with that logic, someone will have to explain it to me. The Hutchens Defendants have not done so yet. The motion to alter or amend as to proximate cause is denied.

**ORDER**

1. Motion #694 is GRANTED.

2. Motion #710 is GRANTED IN PART and DENIED IN PART. The Court has reviewed and, with respect to the unclean hands issue, reconsidered and clarified its previous order to some extent. However, in all other respects the motion is denied.

DATED this 16th day of November, 2016.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

11